303 So.2d 342 (1974)
Miguel VALDES, Sr., As Father of Miguel Valdes, Jr., Deceased, and Samuel S. Smith, As Administrator of the Estate of Miguel Valdes, Jr., Deceased, Appellants,
v.
Peter SMALLEY, a Minor, by and through His Father, Next Friend and Natural Guardian, H. Earl Smalley, et al., Appellees.
No. 73-1327.
District Court of Appeal of Florida, Third District.
October 29, 1974.
Rehearing Denied December 9, 1974.
Wolfson & Diamond, Joe N. Unger, Miami Beach, for appellants.
Papy, Levy, Carruthers & Poole, Stephens, Magill, Thornton & Sevier, and Thomas A. Graham, III, Corlett, Merritt, Killian & Mascaro, Preddy, Haddad, Kutner & Hardy, Miami, for appellees.
Before BARKDULL, C.J., and HENDRY and NATHAN, JJ.
HENDRY, Judge.
This case presents a question of law similar to that raised in O'Dwyer v. Manchester Insurance Co., Fla.App. 1974, 303 So.2d 347, filed this date, except the issue is posed in an entirely different factual setting.
The appellants have filed this appeal from adverse summary judgments entered in favor of the automobile liability carriers of both the driver and passenger of the vehicle involved in this case. The trial court also denied a motion for summary judgment filed by National Fire Insurance Company of Hartford, appellee Spradley's insurer under a homeowner's policy. This latter order is not involved in this appeal.
The insurance companies which are involved in this appeal are the following: Millers Casualty Company of Texas, auto liability carrier under a policy issued to the father of defendant-appellee Stephen Scott Spradley; National Ben Franklin Insurance Company, the auto insurer of the father of Peter Smalley, the driver of the *343 car involved herein; and Reserve Insurance Company, an excess auto liability carrier of the Smalley vehicle.
The facts giving rise to this litigation are tragic. On the evening of April 26, 1969, the defendants Stephen Scott Spradley and Peter Smalley were involved in an altercation with other teenage youths in the parking lot of a restaurant on South Dixie Highway. The fight was dispersed apparently due to the presence of police; however, it was arranged to meet in the vicinity of the Merry Christmas Park on LeJeune Road, not far from the restaurant, to "settle the score."
Spradley and Smalley drove together to the park in a two-door foreign sports car belonging to Smalley's father, who had given his son permission to use the vehicle. Apparently, the boys expected to meet other friends at the park in order to renew the encounter. However, after they arrived at the park and got out of the car, they spotted unknown youths approaching, and the two boys got back into their car, and drove away from the park. But, they decided to circle back around to see if their friends had arrived.
At this point, as Smalley, the driver, approached the park he spotted the unknown boys standing on both sides of the road. The boys began pelting the Smalley car with rocks, and Smalley drove past them at a speed of about forty miles per hour. His passenger, Spradley, then threw a glass beer mug out of the left front of the car towards a spot where the majority of the boys were standing to "clear people out of the road."
The mug struck Miguel Valdes, J., age 18, in the head and a few days later resulted in his death. Spradley did not know Valdes, and he was not aiming the mug at him when he threw it. Smalley testified in a deposition that he did not learn until later that Spradley had thrown the mug which resulted in tragedy because when the unknown boys began throwing rocks at the car, Smalley ducked.
Subsequently, the administrator of young Valdes' estate and his father brought a wrongful death and survival action which were consolidated in the trial court.
The main thrust of this appeal is that the trial court erred by entering a summary judgment in favor of the automobile liability carriers. Appellants contend that the standard language of the policies, that the insurer shall pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages for bodily injury "arising out of the ownership, maintenance or use of the owned automobile, or any non-owned automobile," extends coverage to the defendants in this case.
In sum, the issue is whether or not the injury and death of Valdes "arose out of the use" of the vehicle.
As we indicated in O'Dwyer v. Manchester Insurance Co., supra, the courts have not uniformly reached the same results in applying the language of the policy to differing facts.
For example, the appellees cite the following cases which under analogous facts held the accident did not "arise out of the use": St. Paul Fire & Marine Ins. Co. v. Thomas, Fla.App. 1973, 273 So.2d 117; Government Employees Ins. Co. v. Melton, 357 F. Supp. 416 (D.C.S.C. 1972); Mazon v. Farmers Ins. Exch., 107 Ariz. 601, 491 P.2d 455 (1972); Richland Knox Mut. Ins. Co. v. Kallen, 376 F.2d 360 (6th Cir.1967); Speziale v. Kohnke, 194 So.2d 485 (La. App. 1967); McDonald v. Great American Ins. Co., 224 F. Supp. 369 (D.C.R.I. 1963).
Appellants, on the other hand, cite the following recent cases in which it was determined that the accident did arise out of the use of the vehicle. Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29, 312 A.2d 664 (1973); State Farm Mut. Automobile Ins. Co. v. Partridge, 109 Cal. Rptr. 811, 514 P.2d 123 (1973); Home Indemnity Co. v. Lively, *344 353 F. Supp. 1191 (W.D.Okl. 1972); Cf., National Indemnity Co. v. Corbo, Fla.App. 1971, 248 So.2d 238; see also, Wyoming Farm Bur. M. Ins. Co. v. State Farm M. Auto Ins. Co., 467 F.2d 990 (10th Cir.1972).
Appellees urge that the cited case of St. Paul Fire & Marine Ins. Co. v. Thomas, supra, cannot be distinguished from the instant case, and therefore affirmance is mandated. In St. Paul the Fourth District Court of Appeal considered a complaint in which it was alleged that the plaintiff was injured when her car went out of control when the defendant threw a pop bottle out of the window of his car into the path of the car in which the plaintiff was riding.
The plaintiff sought coverage under the defendant's homeowner's policy, which contained a standard exclusionary clause with respect to the "use" of an automobile away from the premises.
The court, narrowly construing an exclusionary provision of an insurance policy to afford the broadest coverage, held that the accident did not arise out of the use of the vehicle, and therefore the insured was entitled to coverage under the homeowner's policy.
In our opinion, there are distinguishing factors present in the cause sub judice. In the first place, the clause at issue here is not an exclusion, but a clause which reflects as its dominant purpose an intention to extend coverage to the insured or injured party. Therefore, the clause must be liberally construed in favor of the insured. See, State Farm Mut. Automobile Ins. Co. v. Partridge, supra; Wyoming Farm Bur. M. Ins. Co. v. State Farm M. Auto Ins. Co., supra; Daleo v. Bert & Bette Bayfront 66 Marine, Fla.App. 1973, 273 So.2d 113.
Secondly, we believe the facts of this case are distinguishable. Here, the two teenage defendants became involved in a restaurant parking lot in an incident which had the potential to develop into a rumble. They decided to continue the trouble at a nearby park.
The record reveals that the third amended complaint filed in the survival action, consolidated into the wrongful death action, flatly alleges that the defendants, Spradley and Smalley, were engaged in a joint venture. See, Yokum v. Rodriguez, Fla. 1949, 41 So.2d 446; Conner v. Southland Corporation, Fla.App. 1970, 240 So.2d 822. While we express no opinion as to whether the appellants have satisfactorily shown that the boys were actually involved in a joint enterprise within the exact legal definition of the term, we do not think it can be denied that the two boys had a mutual purpose in driving to the park and were acting in harmony with each other. (Compare, Wyoming Farm Bur. M. Ins. Co. v. State Farm M. Auto Ins. Co., supra).
Also, we note that the complaint clearly charges both boys with negligence, not merely Spradley who threw the mug. Nor do we think that after affording all reasonable inferences to the appellants on a motion for summary judgment it can be shown that Smalley's use of the automobile was not a substantial concurrent cause to the accident.
He was driving the auto at a high rate of speed which no doubt greatly contributed to the velocity of the mug. And, when the mug was thrown Smalley was ducking, so that he could do nothing to prevent the mug being thrown nor the direction in which it traveled.
In St. Paul, the court stated:
"His [the defendant's] liability arose out of negligently throwing the bottle in the roadway. It would not have been altered or affected had he in a similar manner negligently thrown a bottle into the roadway while seated in a car parked on the shoulder of the road, or while standing outside of the car, or while standing on an overpass above the roadway." 273 So.2d at p. 121.
In our view, the tragic occurrence in this case might very well have been different had the car been standing still, or had Spradley been standing outside of the vehicle; perhaps the defendants in this case *345 would not be facing civil liability for a wrongful death had their car not been proceeding at 40 miles per hour.
In short, we believe the accident originated from and was causally connected with the use of the automobile and that Spradley's act of throwing a mug was not a remote or mere "intervening event" bearing no substantial or direct relation to the use of the vehicle. See, O'Dwyer v. Manchester Ins. Co., supra; Baudin v. Traders & General Ins. Co., 201 So.2d 379 (3rd Cir., La. App. 1967).
In this regard, we quote the following excerpt from the well-reasoned opinion of the New Jersey court in Westchester Fire Ins. Co. v. Continental Ins. Co., supra:
"* * *
"In our mobile society the act of throwing or dropping objects from moving vehicles is not such an uncommon phenomenon that such occurrence may not be anticipated, nor so inconsequential that members of the public need no financial protection from the consequences thereof. However anti-social such conduct may be, everyday experience tells us that various objects are thrown or permitted to fall from moving vehicles. Common examples are lighted cigarettes and cigars, food and drink containers, and other debris. Any one of such objects has a potential for injury to persons on and along the highway. It is of some significance that the Legislature has seen fit to prohibit the loading of vehicles in such a manner as to permit them to spill or scatter their contents on the street. N.J.S.A. 39:4-77. In the same vein, the Legislature has proscribed the throwing or dropping of objects from vehicles while on the highway. N.J.S.A. 39:4-64.
"[9] In our view, although Holcombe's act in throwing the stick from the automobile may not have been foreseen or expected, it was a sufficiently foreseeable consequence of the use of the vehicle to mandate coverage under the terms of the policies. We think it was within the reasonable expectation of the parties that the insureds be provided with protection against the consequences of such an act. We think also that a member of the public who sustained injury as a result of such an unfortunate occurrence might reasonably be expected to look to the vehicle and those using it as the source of redress.
"This interpretation is consonant with the general rule of construction of insurance policies referred to above  that policy language which permits more than one construction must be liberally construed in favor of the insured to provide coverage. It also comports with the reasonable expectation of the parties as to the scope of coverage to be provided under these policies." (312 A.2d at p. 669-670)
Therefore, for the reasons stated and upon the authorities cited and discussed, the judgments appealed are reversed, and the cause is remanded for further proceedings consistent with this decision.
Reversed and remanded.