374 So.2d 539 (1979)
AETNA CASUALTY AND SURETY COMPANY, Appellant,
v.
Stuart Goldman, Appellee.
No. 78-2272.
District Court of Appeal of Florida, Third District.
July 3, 1979.
Rehearing Denied September 25, 1979.
*540 Ress, Gomez, Rosenberg & Howland and Roland Gomez, North Miami, for appellant.
Nachwalter, Christie & Falk and Jay M. Levy, Miami, for appellee.
Before PEARSON and SCHWARTZ, JJ. and CHAPPELL, BILL G., Associate Judge.
PEARSON, Judge.
Aetna Casualty and Surety Company was the plaintiff in a declaratory action to determine coverage under the uninsured motorist provision of its policy issued to Stuart Goldman. The trial court held that coverage existed and this appeal is from that final judgment.[1] We reverse upon a holding that the evidence presented established that coverage did not exist because the injuries sustained did not arise from the use of an uninsured automobile, but rather from a bomb placed in Mr. Goldman's car.
The evidence accepted by the trial court, including incompetent affidavits, when viewed with all reasonable inferences for the appellee, Mr. Goldman, can be said to *541 have established the following: One Robert Lowney accompanied by others drove to the vicinity of the Goldman residence where Lowney's companions, Jacobson and Wood, got out of Jacobson's car. Wood was carrying a paper bag in his hand. They placed the bag under a nearby automobile. Mr. Goldman entered his own automobile at approximately 9:30 p.m. when the automobile was parked near his apartment. When he attempted either to start the automobile or to place it in gear, the car exploded as a result of a bomb having been attached to the car and set to detonate upon use of the car. As a result of the bomb explosion, Mr. Goldman sustained serious personal injuries. The car used to transport the bomb to the vicinity of the Goldman residence was uninsured.
Aetna had issued a policy of motor vehicle liability insurance to Mr. Goldman which included protection against uninsured motorists and which required Aetna
"[t]o pay all sums which the Insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called `bodily injury', sustained by the Insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile ..."
This coverage included as an uninsured motorist a "hit-and-run" automobile which was defined in the policy as follows:
"... an automobile which causes bodily injury to an Insured arising out of physical contact of such automobile with the Insured or with an automobile which the Insured is occupying at the time of the accident, provided:
(a) there cannot be ascertained the identity of either the operator or the owner of such `hit-and-run automobile' ..."
The trial judge found:
"The Defendant, STUART GOLDMAN, has established proof, by and thru his pleadings and affidavits, that the vehicle involved in his accident was owned by a fictitious name, at a fictitious address and carried no insurance.
"The driver of the adverse vehicle intentionally caused the damage and injuries to the Defendant, STUART GOLDMAN.
"The injuries of the Defendant, STUART GOLDMAN, resulted from the ownership, maintenance and use of an uninsured automobile which automobile was used for the purpose of transporting the explosive devices to the scene of the accident. Said devices exploded and caused the injuries to the Defendant. Moreover, it is equally clear that at the time in question, the said automobile was used for the exclusive purpose of transporting its driver and the explosives as speedily as possible to and from the scene of the accident.
"This Court's Order of October 4, 1978, gave the Plaintiffs twenty (20) days to establish proof of insurance for the adverse vehicle.
"That by its own admission, on October 11, 1978, the Plaintiff[s] have not been able to comply.
"Therefore, pursuant to the specific request of the Court of Appeals, Third District, it is hereby
"ORDERED AND ADJUDGED as follows:
"1. The vehicle that transported the explosives to and from the accident site was uninsured.
"2. This accident was intentionally caused.
"3. The uninsured motorist [c]overage of STUART GOLDMAN'S policy does provide him coverage for this accident.
"4. Pursuant to the insurance contract at issue, this cause shall now proceed on to arbitration."
The appellant insurance company urges that as a matter of law, it could not be concluded from the facts before the court that Goldman's injuries arose out of the ownership, use or maintenance of an uninsured vehicle as defined by Section 627.727, *542 Florida Statutes (1977), or as defined by the policy issued to Goldman. The operative sentence in the cited section is:
"(1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom."
* * * * * *
A reading of the entire section shows that the purpose of uninsured and underinsured motorists coverage in Florida is to place the insured motorist in the same position with regard to liability insurance when he is injured by an uninsured motorist as the insured motorist would have been if the uninsured motorist had obtained liability insurance. To that end, the statute confines itself to "damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom."
It is important, we think, to point out that it is necessary for coverage under the uninsured motorist provision of the statute and the policy with which we are here concerned that the injury complained of have some causal connection with the uninsured car. The injury caused primarily by the bomb may be viewed as connected with the operation of Mr. Goldman's own car because he was in it and attempting to operate it when the explosion occurred. On the other hand, the claimed connection with the uninsured car is much more remote. The claimed connection is that the uninsured car was used as transportation to the place where the crime of implantation took place.
The appellee, Goldman, relies upon the reasoning of this court in Valdes v. Smalley, 303 So.2d 342 (Fla.3d DCA 1974), for affirmance of the trial court's holding that coverage existed. In that case, this court construed the language of an automobile liability policy to hold that injury caused by an object thrown from the insured's car was covered because the injury arose out of "the ownership, maintenance or use of [such uninsured] automobile." In Valdes, the holding was that it was within the reasonable expectation of the parties that the insureds be provided with protection against the consequences of such an act, that is, the throwing or dropping of objects from moving vehicles. Appellee points out that there is very little difference between the use of a car in throwing objects so that they strike other persons and in using an automobile to drive to a point where an explosive device is attached to another automobile. We think that this difference is of some importance in this case. In Valdes, it was held that the injury caused by the thrown object was greatly contributed to by the fact that the automobile from which the object was thrown was proceeding at a high rate of speed. The court was careful to point out: "In our view, the tragic occurrence in this case might very well have been different had the car been standing still or had Spradley been standing outside of the vehicle; perhaps the defendants in this case would not be facing civil liability for a wrongful death had their car not been proceeding at 40 miles per hour." 303 So.2d at 344-345. See also Westchester Fire Insurance Co. v. Continental Insurance Companies, 126 N.J. Super. 29, 312 A.2d 664, 669-670 (1973), with regard to "foreseeable consequences" and the "reasonable expectation of the parties."
In the present instance, the only connection between the uninsured automobile and the injury was that the uninsured automobile was used for transportation. See Richland Knox Mutual Insurance Company v. Kallen, 376 F.2d 360 (6th Cir.1967); and Mazon v. Farmers Insurance Exchange, 107 Ariz. 601, 491 P.2d 455 (1971). The injury would have been the same if the malefactors and their bomb had been transported by commercial vehicle, bicycle or helicopter. *543 It likewise follows that the injury would have been the same if the insured automobile had been parked a mile away from the scene of the crime and the defendants had stealthily approached the area. All of which is to say that it cannot, by any means, be said that "but for" the existence of the uninsured automobile, the injury would not have taken place. See W. Prosser, The Law of Torts § 41 (4th Ed. 1971); Government Employees Insurance Company v. Melton, 357 F. Supp. 416, 418 (D.S.C. 1972). Accordingly, we hold that there is no causal connection between the use of the uninsured automobile and the injury to Mr. Goldman by a bomb connected to his automobile by the malefactors who were responsible for the act.
Finally, we would point out that by viewing this case with regard to uninsured "motorists," rather than uninsured "vehicles," we may gain further insight into the present inquiry. Under the circumstances of this case, we must determine whether the malefactors can be viewed as "motorists" during that critical time period connected with the placing of the bomb. We have little trouble in making a determination that these individuals bear no characteristics associated with being motorists. In this regard, the mere fact that at non-critical times their mode of ingress and egress in carrying out their project involved their assuming the role of motorists in no way detracts from this holding. As a point of comparison, we might comment that the malefactors in the Valdes v. Smalley case, supra, most definitely were "motorists" at the critical times involved. When the passenger in that case threw the mug from the moving car, the results of his acts were imputed to the driver, who was certainly a motorist in the truest sense of the word. By this comparison, however, we do not imply that a motorist need be a person actively driving a vehicle. This is borne out in the case of National Indemnity Co. v. Corbo, 248 So.2d 238 (Fla.3d DCA 1971), a case relied upon herein by appellee Goldman. In the Corbo case, the son of the insureds was transporting the family dog in the family car. Also in the car was a friend of the son. While en route, the son parked the car at a drugstore and got out. The dog then bit the friend and in the resulting appeal, it was determined that the incident "arose out of the use of the automobile." Although the son was absent from the car and although the car was parked, nevertheless, it is not difficult to determine that the creation and maintenance of the particular circumstances of the case did, most assuredly, involve the action of the son in his capacity as a motorist. In that capacity, the son (1) had invited his friend to ride with him, (2) was in the process of transporting his friend and the dog, thereby (3) creating the hiatus in the progress of the journey during which the friend was bitten by the dog. In short, the Valdes and Corbo cases involve "motorists," while the present case does not. There simply is no "critical" moment when the present malefactors could be viewed as "motorists."
We, therefore, reverse the judgment appealed and remand the cause with directions to enter judgment for the appellant, Aetna Casualty & Surety Company, holding that there is no uninsured motorist coverage under this policy.
Reversed and remanded.
NOTES
[1] This appeal is a second appearance of this cause in this court. In Aetna Casualty & Surety Company v. Goldman, 346 So.2d 111 (Fla.3d DCA 1977), the cause was remanded with directions that the trial court determine the coverage issue.