463 So.2d 1256 (1985)
Tomas PENA, Appellant,
v.
ALLSTATE INSURANCE COMPANY, a Foreign Insurance Company, Appellee.
No. 84-1245.
District Court of Appeal of Florida, Third District.
March 5, 1985.
*1257 Sanford M. Reinstein, Hialeah, for appellant.
Spencer, Taylor & Homer and Thomas Spencer, Miami, for appellee.
Before SCHWARTZ, C.J., and NESBITT and DANIEL S. PEARSON, JJ.

AMENDED OPINION
NESBITT, Judge.
The plaintiff appeals from a final summary judgment entered in favor of the defendant, the insurer, in an action for a declaratory judgment on insurance coverage. We reverse in part and affirm in part.
The plaintiff is the driver of a taxi cab which is insured by the defendant. On the day of the accident, a passenger entered the plaintiff's cab and asked to be driven to an area where he obviously intended to rob the plaintiff. The passenger pulled a gun and demanded the plaintiff's money. The plaintiff grabbed for the gun and, as a result, sustained injuries to his left hand. The injuries were caused either by the gun barrel or a bullet coming from the gun. The assailant then ordered the plaintiff out of the cab and drove the cab away from the scene.
The plaintiff made a formal demand on the defendant for personal injury protection benefits (including medical payment benefits) and uninsured motorist benefits pursuant to an insurance contract entered into by the parties. The defendant denied the claims, and the plaintiff brought this declaratory action pursuant to chapter 86, Florida Statutes (1983). The trial court denied the plaintiff's motion for summary judgment and granted the defendant's motion, declaring that the plaintiff was not entitled to any coverage under the policy. This appeal followed.
With regard to the personal injury protection (including the medical benefits), see § 627.736(1), Fla. Stat. (1983), the policy provides that payments are to be made for injuries "caused by an accident arising from the use of a motor vehicle as a motor vehicle." We find that reversal of that portion of the summary judgment dealing with this coverage is mandated by the decision in Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla. 1984). In Novak, the supreme court found that personal injury protection benefits were available to an insured who was shot after refusing to give the assailant a ride in her car.[1] The court held:
It is well settled that "arising out of" does not mean "proximately caused by," but has a much broader meaning. All that is required is some nexus between the motor vehicle and the injury... . [citations omitted]
The clause, "arising out of the use of a motor vehicle," is framed in such general, comprehensive terms in order to express the intent to effect broad coverage. [citation omitted] Such terms should be construed liberally because their function is to extend coverage broadly. [citation omitted] [emphasis added]
453 So.2d at 1119. See also Fortune Insurance Co. v. Ferreiro, 458 So.2d 834 (Fla.3d DCA 1984). All that is required, *1258 following Novak, is that "some nexus" exist between the motor vehicle and the injury.[2]
In Novak, the court found that a sufficient nexus existed because it was the assailant's wish to obtain a ride in or possession of the motor vehicle which motivated the assault and the injuries. In the present case, the fact that the motor vehicle was a taxi cab was clearly the motivating factor which led the robber to choose the plaintiff as his victim. The fact that the plaintiff was operating a taxi meant he was more likely to have cash (from cab fares) than the average driver. More importantly, the vehicle itself became an instrumentality in the robbery when it was used not only to take the plaintiff and the robber to the scene of the crime, but also as a means of escape for the robber after the commission of the crime. We find that the nexus between the taxi cab and the plaintiff's injuries is at least as strong if not stronger than the nexus which existed between the car and the injury in Novak. Accordingly, we are compelled to reverse that portion of the summary judgment which declared the plaintiff was not entitled to the personal injury protection and medical benefits provided for in the policy.[3]
We reject the plaintiff's argument, however, that he is also entitled to the uninsured motorist coverage. The policy provides:
We will pay damages for bodily injury ... which a person insured is legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured or underinsured auto.
Uninsured vehicle (motorist) coverage is for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury resulting therefrom. § 627.727(1), Fla. Stat. (1983). The purpose of uninsured and underinsured motorist coverage in Florida is to place the insured motorist in the same position with regard to liability insurance when he is injured by an uninsured motorist as the insured motorist would have been in if the uninsured motorist had obtained liability insurance. To that end, section 627.727 confines itself to "damages from owners or operators of uninsured motor vehicles". Aetna Casualty & Surety Co. v. Goldman, 374 So.2d 539, 542 (Fla. 3d DCA 1979), cert. denied, 385 So.2d 757 (Fla. 1980).
In the present case, the taxi cab was obviously covered by insurance issued by the defendant. There was no uninsured vehicle or uninsured motorist involved in the incident which led to the plaintiff's injuries. Accordingly, the plaintiff is not entitled to the uninsured motorist coverage provided for in the policy.[4]See Aetna Casualty.
*1259 On the foregoing reasoning and authority, that portion of the summary judgment dealing with the personal injury protection and medical benefits coverage is reversed with instructions to enter a declaratory final judgment for the plaintiff. The summary judgment is affirmed with regard to the declaration that the plaintiff is not entitled to uninsured motorist coverage under the defendant's policy.
Reversed in part; affirmed in part and remanded.
SCHWARTZ, Chief Judge (dissenting in part).
I do not agree that GEICO v. Novak, 453 So.2d 1116 (Fla. 1984) or the rule it adopts requires reversal of the determination that p.i.p. coverage is unavailable on these facts. While Novak admittedly has reduced the causal thread or "nexus" required between the accident and, as the policy says, the "use" of a motor vehicle to the point of electron-microscopic visibility, it did not  as does the majority here  eliminate it altogether. The fact is that in Novak itself, in which the attack on Ms. Novak was motivated by her rebuffing the assailant's attempt to take possession of her car, and in the post-Novak decisional findings of coverage, a palpable and, if only dimly so, discernible relationship to the use of the car has indeed existed. See Fortune Ins. Co. v. Ferreiro, 458 So.2d 834 (Fla. 3d DCA 1984) (claimant shot by driver of vehicle attempting to force his truck off road); Allstate Ins. Co. v. Gillespie, 455 So.2d 617 (Fla. 2d DCA 1984) (claimant injured in assault arising from argument over insured's driving).
But, in my view, there is no nexus whatever present in this case. I am singularly unimpressed with the majority's attempt to create one out of the whole cloth of the presumed motivations of the robber, a person who has not been interviewed or even seen since he attacked the plaintiff. It seems to me that this parapsychological venture into the workings of a particular but completely anonymous criminal mind is such as to raise, by comparison, the fabled triplets of conjecture, speculation and surmise to the status of proof beyond a reasonable doubt. Since, I had thought, we are not authorized to give evidentiary effect to a metaphysical enterprise such as this, we are left with a situation in which the admissible proof demonstrates only, as in Reynolds v. Allstate Ins. Co., 400 So.2d 496 (Fla. 5th DCA 1981), that the vehicle was no more than the fortuitous location of the robbery and of the plaintiff's resulting injury.[1] And it is clear that Reynolds has not been disturbed by Novak, as the majority intimates. In Novak, the Supreme Court said:
We do not believe that our holding necessarily implies disapproval of Reynolds v. Allstate Insurance Co., the case cited by the petitioner as being in conflict. We believe the facts of that case make it distinguishable from this one. The decision there turned on the plaintiff's failure to allege facts sufficient to show the nexus between the use of the car and the injuries.
453 So.2d at 1119.
Both the continued viability of Reynolds, and its controlling effect upon this case are demonstrated by the very recent decision of Allstate Ins. Co. v. Famigletti, 459 So.2d 1149 (Fla. 4th DCA 1984). In that case, the court, relying on Reynolds and distinguishing Novak, found no coverage in *1260 a situation in which the insureds had been shot in a personal feud while they were seated in their car. See also, Protective Casualty Ins. Co. v. Hernandez, 450 So.2d 864 (Fla. 3d DCA 1984) (no p.i.p. coverage for injuries sustained when police forcibly removed insured from vehicle after stop for traffic infraction). Since I believe that the Reynolds and Famigletti holdings that coverage is not provided merely because the vehicle is the situs of the injuries represent the current law of Florida and are applicable here, I would affirm the judgment below in its entirety.
NOTES
[1] There can be little dispute over the conclusion that the shooting involved in this case which resulted in the injury to the plaintiff was an "accident" within the meaning of the policy as that term has been construed by the supreme court. See Novak, 453 So.2d at 1118. See also Novak, 453 So.2d at 1120 (Ehrlich, J. dissenting).
[2] In Reynolds v. Allstate Ins. Co., 400 So.2d 496 (Fla. 5th DCA 1981) the court reiterated the rule "that it is not enough that an automobile be the physical situs of an injury or that the injury occur incidentally to the use of an automobile, but that there must be a causal connection or relation between the two for liability to exist." 400 So.2d at 497 (citing Stonewall Ins. Co. v. Wolfe, 372 So.2d 1147 (Fla. 4th DCA 1979), cert. denied, 385 So.2d 762 (Fla. 1980)). The viability of Reynolds after Novak is uncertain. While the four-justice majority in Novak qualifiedly distinguished Reynolds ("We do not believe that our holding necessarily implies disapproval of Reynolds ...."), the three dissenters relied on Reynolds as support for the view that coverage should not have been extended because of the lack of a sufficient causal connection between the injury and the vehicle. Regardless of Reynolds' continued viability, it is apparent that the supreme court has greatly reduced the causal connection or nexus which must exist between the injury and the vehicle before personal injury protection coverage is found.
[3] We note that the trial court did not have the benefit of the Novak decision when it entered the summary judgment in this case.
[4] This decision is consistent with this court's decision in Ferreiro. The holding there was that the injury (plaintiff shot by driver of car attempting to force plaintiff's truck off the road) was the result of an accident arising out of the use, maintenance or operation of a vehicle. Ferreiro merely follows the holding in Novak. The dicta in Ferreiro should not be construed as indicating uninsured motorist benefits would be allowed in the absence of an uninsured motorist or vehicle. The facts of that case indicate that uninsured motorist coverage would be available under the typical "hit-and-run motor vehicle" provision which defines such a vehicle as an uninsured automobile for purposes of coverage.
[1] The present case is analytically indistinguishable from those, for example, in which a robber injures a bus driver, or the operator of an armored car, or a hitchhiker does so to the beneficent person who picked him up. (The majority doctrine may also apply when the vehicle is a valuable one such as a Rolls Royce, on the ground that its value influenced the decision to steal, but not to a mere Chevrolet.) I would have assumed that no one would consider that there was a "causal nexus" between the use of the vehicle and the injury in any of these instances.