**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee,**

v.

**Mary Melissa BROWN, etc., et al. a minor under the age of fourteen (14) years and James E. Hunter, administrator of the Estate of Lynda S. Brown, Deceased, Appellants,**

and

**Toby A. Brown, Aaron Proctor and Anne K. Dunn, Defendants,**

and

**Insurance Company of North America, Appellee.**

No. 85–1205.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1985.

Decided Dec. 18, 1985.

---

Frank A. Barton (Oswald & Floyd, West Columbia, S.C., on brief), for appellants.

Steven W. Ouzts (Turner, Padget, Graham & Laney on brief) and James B. Lybrand, Jr. (Robert A. McKenzie, McDonald, McKenzie, Fuller, Rubin & Miller, Columbia, S.C., on brief), for appellees.

Before PHILLIPS and SNEEDEN, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge.

This diversity case involves the potential coverage, under South Carolina law, of three automobile policies in respect of a collision and a fatal shooting. The claimants, the estate and daughter of the shooting victim, appeal the grant of summary judgment for the insurance companies. The district court found that the policies provided no coverage for the shooting on the basis that the shooting-caused injuries did not arise out of the ownership, maintenance, or use of the motor vehicle, did not arise out of garage operations, and were not accidental. After determining that the claimants had presented no evidence of injuries resulting solely from the collision, the court also concluded that there was no liability in respect of the collision.

We affirm on the issue of non-coverage as to the shooting. On the question of collision-caused injuries, however, we find genuine issues of material fact which might result in insurer liability; accordingly, we vacate and remand on this issue for further proceedings.

I

On December 15, 1982, Toby Brown, owner of Brown's Auto Service, and Aaron Proctor, a mechanic at Brown's auto shop, borrowed Anne Dunn's pickup truck in order to pick up some Christmas presents, and, in return for the favor, Proctor and Brown offered to change the tires on the truck. The following day, Proctor picked up the gifts and returned the truck to the shop. The repairs were never made. On December 17, 1982, Brown told Proctor to use the Dunn truck to meet Brown in a neighboring town to pick up a customer's car. After Proctor picked up Brown in that town, Brown explained that he wanted to locate his estranged wife, Lynda Brown. Brown told Proctor that he had a gun and would kill his wife if she refused to speak with him. Brown and Proctor eventually found Lynda Brown in her car with their child, Mary Melissa Brown. As the vehicles approached, Brown shoved Proctor and the steering wheel, causing Dunn's truck to collide with Lynda Brown's car. Following the collision, Toby Brown jumped out of the truck and shot and killed his wife while she sat in the car.

The administrator of Lynda Brown's estate and Mary Melissa Brown brought wrongful death and survival actions in South Carolina state court against Brown and Proctor. At the time of the incident, there were three liability insurance policies providing general coverage for the Dunn and Brown vehicles. Two of the policies were issued by Nationwide Mutual Insurance (Nationwide). One of these was a garage liability policy (Nationwide garage policy) issued to Toby Brown d/b/a Brown's Auto Service, and the other was a standard automobile liability policy issued to Anne Dunn (Nationwide Dunn policy) covering her truck. Insurance Company of North America (INA) issued the third policy, an automobile liability insurance policy, issued to Toby and Lynda Brown (INA Brown policy), providing uninsured, underinsured, and personal injury protection coverage.

With the state actions pending, Nationwide commenced this federal declaratory judgment action, in which INA subsequently joined, seeking a declaration of non-coverage under the three insurance policies. With issue joined, the insurance companies moved for summary judgment on the basis that the injuries for which liability was asserted by Brown did not arise out of the ownership, maintenance or use of a motor vehicle and, therefore, were not covered under the policies.

Both the Nationwide Dunn policy and the INA Brown policy require as a condition of coverage that the injuries for which coverage is claimed arise out of the ownership, maintenance or use of an automobile.[1] Both insurance companies claimed that as a matter of law, on the undisputed facts, this condition of coverage was not met. Nationwide further claimed non-coverage under its two policies on the basis that because the acts upon which liability was claimed were intentional, they were excluded from coverage by express provisions of both policies.[2] Finally, Nationwide asserted, as an additional basis for non-coverage under the Nationwide garage policy, that the acts upon which liability was claimed did not arise out of "garage operations" as required by the policy and, hence, were excluded from coverage.[3]

The district court granted the motions for summary judgment on the several grounds alleged by the insurance companies. The court determined that as a matter of law the shooting related injuries did not arise out of the ownership, maintenance or use of the vehicles because no causal relation existed between the injuries and the use of the automobiles as automobiles. The court also concluded that the injuries resulted from an intentional act

and that under South Carolina law the insurance companies had, and could properly have, excluded intentional acts under automobile insurance policies. Finally, the court concluded that the shooting neither resulted from garage operations nor was accidental and, thus, was not covered under the Nationwide garage policy.

Having disposed of the basic question of coverage for the shooting, the court then held additionally that the claimants had presented no evidence of injuries resulting directly from the collision itself. On this basis, therefore, the court granted summary judgment for the insurance companies as to any collision related injuries.[4]

This appeal followed.

## II

We deal initially with the issue of insurance coverage as to the shooting. We agree with the district court's holding and analysis in its grant of summary judgment on this question and find no coverage for the shooting related injuries under any of the three policies.

 First off, the claim of liability based upon the act of shooting does not meet the threshold requirement under the Nation-

---

1. The Nationwide Dunn policy provides under the "Auto Liability" provisions that it will pay damages "resulting from the ownership, maintenance, use, loading or unloading of your auto." According to both the uninsured and the underinsured provisions of the INA Brown policy, the liability of the owner of the uninsured or underinsured vehicle "must arise out of the ownership, maintenance or use of the uninsured [or underinsured] motor vehicle." Likewise, the Personal Injury Protection provisions of the INA policy require that the bodily injury to the covered person must "result from the ownership, maintenance or use of an auto as an auto."

2. The Nationwide Dunn policy contains an express exclusion providing that liability coverage does not apply for injuries or damages "caused intentionally by or at the direction of an insured." The Nationwide Garage policy also limits the carrier's liability to personal or property damage "caused by an accident and resulting from garage operation." The policy defines "accident" as occurrences which are neither expected nor intended from the perspective of the insured, rather than that of the victim.

3. The Nationwide Garage policy stipulates that "we will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies caused by an *accident and resulting from garage operations*." (Emphasis added.)

4. It is at least questionable whether the insurance companies had sought more than an adjudication of coverage under the various policy terms. Were this the limit of the requested declaration of rights, it would not of course encompass an adjudication of tortfeasor, hence insurer, *non-liability for failure to establish* compensable injury. Whether this particular adjudication of non-liability was within the permissible scope of the court's remedial power, *see* Fed.R.Civ.P. 54(c), is a question we need not resolve in view of our determination that in any event, there were factual issues of tortfeasor liability, that could not be resolved against the claimants on this summary judgment record. *See* Part III, *infra.*

wide Dunn policy and the INA Brown policy that the claim arise "out of the ownership, maintenance or use" of the automobiles. The appellants premise their claim of coverage upon a unique negligence theory: Proctor's negligence in transporting in an insured vehicle a dangerous person to carry out a known threat. Proctor knew that Brown had a gun, had a propensity for violence, and had threatened to kill his wife. Proctor created the dangerous situation in which Brown was able to fulfill his threats. This use of the truck for transportation, the appellants contend, constituted a normal "use" of a motor vehicle under these policies and the negligence and resulting death are therefore covered.

The closest authority supporting such a general theory of coverage is found in several cases from other jurisdictions involving the transportation in insured vehicles of animals which, in one way or another, inflicted injuries upon persons incident to their transportation. See, e.g., Duvigneaud v. Government Employees Insurance Co., 363 So.2d 1292 (La.App.1978).[5] The great weight of authority in more closely related contexts, however, convinces us that the South Carolina courts would not apply such a negligent transportation theory to find insurance coverage here. This negligence theory and, particularly, the transportation of animal cases relied upon by appellants, gloss over the critical causal relation test. The "accident" upon which insurance coverage is claimed must bear a "causal relation or connection" with the ownership, maintenance or use of the automobile. Plaxco v. United States Fidelity and Guaranty Co., 252 S.C. 437, 166 S.E.2d 799 (1969).

Courts confronted with the general question of whether personal injuries resulting from physical assaults by insured vehicle passengers or operators "arose out of" the ownership, maintenance or use of the vehicle, have almost unanimously found no

causal relation between the "use" of the vehicle and such assault-caused injuries. For instance, in Government Employees Insurance Co. v. Melton, 357 F.Supp. 416 (D.S.C.1972), aff'd, 473 F.2d 909 (4th Cir. 1973), the district court, applying South Carolina law, found no "use" coverage where the claimants had been struck and injured by soft drink bottles thrown from a truck driven by the insured. Concluding that the "arising out of" language contemplates a close causal relation between "ownership, maintenance or use" and claimed injuries, the court stated: "An automobile policy cannot properly be construed to cover injuries that result from acts wholly disassociated from, independent of, or remote from the use of the vehicle." 357 F.Supp. at 418, quoting with approval, 7 Appleman Insurance Law and Practice § 4316(3), at 142. See also Commercial Union Insurance Co. of New York v. Hall, 246 F.Supp. 64 (E.D.S.C. 1965).

In cases dealing with the specific situation here in issue—a shooting by a passenger in or operator of an insured vehicle—the decisions have uniformly applied and found unmet a comparable causal relation requirement. Representative is Detroit Automobile Inter-Insurance Exchange v. Higginbotham, 95 Mich.App. 213, 290 N.W.2d 414 (1980), in which the Michigan court determined that injuries sustained by a wife from a shooting by her estranged husband did not arise out of the ownership, maintenance or use of either the wife's car or that of her husband. The husband had driven his car into the side of his wife's car, forcing it to the curb. While she remained trapped in the car, he got out of his car, walked over to hers, and shot her several times. Holding first that the fact that the wife was an occupant of her car at the time she sustained her injuries was an insufficient basis for finding that her injuries

5. *Duvigneaud* involved a dog which jumped out of an insured car's window causing injury to a motorcyclist. The court held that the insured rider's uninsured motorist insurance provided coverage, because the injuries arose out of the

use of the car as it was being used to transport a large animal. Negligence was premised upon the transportation of the dog in a congested area without rolling up the windows.

arose out of the use of her car, the court then ruled that the injuries did not either arise out of the use of the husband's car:

Cases construing the phrase "arising out of the ... use of a motor vehicle" uniformly require that the injured person establish a causal connection between the use of the motor vehicle and the injury. (Citation omitted.) Such causal connection must be more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use of the vehicle. (Citations omitted.)

Applying this requirement to the present case leads to the conclusion that appellant's injuries did not arise out of Mr. Higginbotham's use of his motor vehicle. An assault by an armed assailant upon the driver of a car is not the type of conduct that is foreseeably identifiable with the *normal* use of a motor vehicle. (Citations omitted.)

To the same general effect, *see also Love v. Farmers Insurance Group*, 121 Ariz. 71, 588 P.2d 364 (App.1978); *Aetna Casualty and Surety Co. v. Goldman*, 374 So.2d 539 (Fla.App.1979); *Nationwide Mutual Insurance Co. v. Knight*, 34 N.C.App. 96, 237 S.E.2d 341 (1977).

We believe, with the district court, that South Carolina courts would employ a comparable rationale in determining whether the shooting assault here arose out of the "ownership, maintenance or use" of either the Dunn or Brown vehicles. Applying that rationale, we conclude that under South Carolina law there is no coverage of this tragic assault and its consequences under either policy.

First, under the Nationwide Dunn policy, it is clear that the use of Dunn's truck for transportation of Toby Brown to the scene of the shooting was merely incidental, remote from the type of conduct that is reasonably foreseeable with the normal use of such a vehicle; and not the causative factor in producing Lynda Brown's death; *see Goldman*, 374 So.2d 539; *Plaxco*, 166 S.E.2d 799. Rather, Toby Brown's assault, an act wholly independent of the use of the

truck, caused the death. Thus, the incidental use of Dunn's truck in the shooting does not meet the causal relation test of coverage.

Neither does the INA Brown policy provide coverage for the consequences of the shooting under this rationale. It is even clearer that the required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the insured vehicle when the shooting occurred. *See, e.g., Love v. Farmers Insurance Group*, 121 Ariz. 71, 588 P.2d 364 (App.1978); *Washington v. Hartford Accident & Indemnity Co.*, 161 Ga.App. 431, 288 S.E.2d 343 (1982).

■ The shooting-related injuries are also excluded under both Nationwide policies as a result of the intentional act exclusions. The Nationwide Dunn policy specifically excludes injuries "caused intentionally by or at the direction of the insured," while the Nationwide garage policy limits liability to injuries caused by an "accident and resulting from garage operations." The policy defines "accident" as being neither expected nor intended, from the perspective of the insured, not the victim.

■ Seeking to avoid this alternative basis for finding non-coverage, the appellants contend that the exclusion of coverage for the insured's intentional acts contravenes the South Carolina Motor Vehicle Financial Responsibility Act. S.C.Code Section 56–9–10 to –910. While some state courts have so construed comparable compulsory insurance provisions, *see, e.g., Nationwide Mutual Insurance Co. v. Roberts*, 261 N.C. 285, 134 S.E.2d 654 (1964), we conclude that South Carolina law is to the contrary. While the appellate courts of South Carolina have apparently not directly addressed this precise issue, we defer to the conclusion of the United States District Court for the District of South Carolina that the South Carolina courts would uphold the intentional act exclusion as not violative of that State's compulsory insurance law. In *Pennsylvania National Mutual Casualty Insurance Co. v. Dawkins*,

551 F.Supp. 971 (D.S.C.1982), Judge Wilkins, construing state law, concluded that the "plain wording of the Financial Responsibility Act is not contravened by the exclusion of intentional torts. The Act requires only that 'accidents' be covered.... Nowhere does the Act mandate that intentional torts be covered. Consequently, intentional torts may be excluded in an automobile insurance policy." 551 F.Supp. at 973.[6]

Because Toby Brown's act of shooting was obviously an intentional one, coverage in respect of his potential liability for that act is not provided under either of the Nationwide policies.

Finally, the Nationwide garage policy provides no coverage for the shooting for the additional reason that the shooting did not arise out of garage operations. The garage policy contemplates a two-prong test in determining the insurance company's potential liability: the injury must be caused by an "accident and resulting from garage operations." Neither prong has been met.

In addition to the fact that Toby Brown's act was intentional, the incident does not fall within the ambit of "garage operations." While the policy includes employees, this coverage is strictly limited to employees only while acting within the scope of their duties as employees of Brown's auto shop. The Dunn truck driven by Proctor and Brown had been borrowed primarily for personal use rather than for repairs. The minor repair, changing a tire, was never accomplished. Moreover, while initially Proctor had an ostensible business purpose in driving the truck to the neighboring town to pick up a car at Brown's

direction, that purpose terminated the moment Brown revealed his true purpose—to locate his wife. Thus, from the time of this revelation, the actions of Brown and Proctor had no business purpose, and the use of the truck did not result from garage operations.

Under all three of the preceding bases, we affirm the lower court's grant of summary judgment denying coverage under the insurance policies for the shooting related injuries.

### III

In addition to the lower court's denial of coverage as to the shooting related injuries, the court also held as a matter of law that the claimants were not entitled to recover under any of the policies for any injuries claimed to have been sustained as a result of the collision preceding the shooting. The court so concluded on the stated basis that the claimants had failed to produce any forecast of evidence of any injuries resulting from the collision itself. On this basis, the court concluded that the insurance companies were entitled as a matter of law to summary judgment in respect of any such claim of liability.

We disagree with the district court's conclusion that the summary judgment record contained no evidence of injuries independent of the shooting that sufficed to withstand a motion for summary judgment. We conclude instead that, *inter alia*, Proctor's deposition testimony concerning the collision and its immediate aftermath suffices to hold open as a disputable issue the fact that the collision resulted in compensable injuries. For instance

---

**6.** In *Heaton v. State Farm Mutual Automobile Insurance Co.*, 278 F.Supp. 725 (D.C.S.C.), *aff'd*, 398 F.2d 824 (4th Cir.1968) (interpreting South Carolina law), Judge Russell rejected the claimant's contention that an exclusionary clause in the insurance contract conflicted with the Financial Responsibility Act's and, therefore, was void. Judge Russell noted that "reasonable exclusionary clauses" do not contravene the Act and that no provision in the Act "either expressly or by implication, requires that such a[n insurance] policy must insure against any and all liability regardless of the circumstances."

See also *Stanley v. Reserve Insurance Co.*, 238 S.C. 533, 121 S.E.2d 10 (1961). (In upholding the validity of an exclusionary clause against a claim of contravention of the Act, the court declared "[w]e cannot read into the insurance contract, under the guise of public policy, provisions which are not required by law and which the parties thereto clearly and plainly have failed to include. If the Act in question fails to accomplish the legislative purpose, the remedy lies with the Legislature and not with the courts." 121 S.E.2d at 13. Citations omitted.)

Proctor testified in his deposition that the impact was "severe" and sounded "like a train (sic) run together." Further, he testified directly to Lynda Brown's condition following the impact:

> I heard her screaming. Because right after—when I was getting up out of the impact, you know, I was almost in the floorboard. And when I got up, I glimpsed her again, up there. And she had her mouth open.... But the impact might have—you know, she might have hit the steering wheel. Because she was slumped over the steering wheel, with her mouth open ... [she was] just screaming. I ain't never heard screaming like that before in my life.

We therefore hold that the court erred in granting on this basis summary judgment in respect of insurer liability for collision-caused injuries.

That does not mean, however, that the insurance companies were not entitled to any declaration of non-coverage with respect to collision-caused injuries. Irrespective of whether such injuries could be proven, there exist other bases for declaring non-coverage as to such injuries with respect to both the Nationwide garage policy and the Nationwide Dunn policy.

■ For the same reasons that the Nationwide garage policy does not by its terms cover shooting-caused injuries, it does not cover collision-caused injuries. Briefly to repeat, the collision, like the shooting, simply did not "arise out of garage operations," a condition to that policy's coverage. Nationwide is therefore entitled to a declaration of non-coverage with respect to its garage policy on that basis.

■ The Nationwide Dunn policy presents a different set of problems respecting coverage as to any collision-caused injuries that could be proven. Assuming that Toby Brown was an "insured" under that policy,[7] any liability for collision-caused injuries based solely upon his acts would not be covered under the intentional act exclusion, for the same reasons that that exclusion would bar coverage with respect to shooting-caused injuries. Further assuming that Proctor was an "insured" under this policy, and for reasons earlier developed, no acts of his in merely transporting Brown to the collision scene could be the basis of liability "arising out of the ... use" of the Dunn vehicle, a condition of coverage under this policy. Hence the policy does not provide coverage for Proctor's acts. Nationwide is therefore entitled to a declaration of non-coverage with respect to its Dunn policy on these bases.

■ There is, however, no basis for a declaration of non-coverage with respect to the INA Brown policy. That policy, as indicated, is an uninsured, underinsured motorist's policy. It also expressly excludes coverage with respect to intentional acts. But South Carolina follows the general rule that "intention" for this purpose is determined by reference to the viewpoint of the insured rather than the uninsured tortfeasor. *See Chapman v. Allstate Insurance Co.*, 263 S.C. 565, 211 S.E.2d 876 (1975); *Page v. North Carolina Mutual Life Insurance Co.*, 207 S.C. 277, 35 S.E.2d 716 (1945). Because Lynda Brown, as the insured under this policy, obviously cannot be charged with any causative intentional act, the exclusion has no application. Because the collision, as opposed to the shooting, clearly arose out of the "use of an auto as an auto," *see* note 1, *supra*, any injuries resulting from the collision itself are on that basis covered under the policy.

### IV

In summary, we affirm that portion of the district court judgment declaring that none of the three policies in issue provides coverage with respect to liability arising from the shooting of Lynda Brown; we

---

7. Any person using an insured vehicle with the permission of the insured owner is an "insured" for purposes of the South Carolina Financial Responsibility Act. S.C.Code § 56–9–810(2). The evidence suggests that both Toby Brown and Proctor might qualify as "insureds" under this provision. Of course, if either did not, that would be a separate basis for non-coverage as to his liability.

**992**

vacate that portion of the judgment declaring that none of the policies in issue provides coverage with respect to liability arising from the collision between the Dunn and Brown vehicles; and we remand for entry of a modified declaratory judgment in respect of coverage as to liability arising from the collision, in accordance with this opinion.

AFFIRMED IN PART; VACATED IN PART AND REMANDED FOR ENTRY OF A MODIFIED JUDGMENT.