704 So.2d 728 (1998)
Rafael ALMENDRAL, As Personal Representative of the Estate of Enrique Almendral and Aurora Almendral, each Individually and as Husband and Wife, Appellants,
v.
SECURITY NATIONAL INSURANCE COMPANY, Appellee.
No. 96-2884.
District Court of Appeal of Florida, Third District.
January 14, 1998.
Robert A. Romagna, P.A. and Steven H. Rothstein, Miami, for appellants.
Rosner & Simon and Eduardo J. Serer; Jeanne Heyward, Miami, for appellee.
Before GODERICH and GREEN, JJ., and BARKDULL, Senior Judge.
PER CURIAM.
This is an appeal from a final summary judgment denying the appellants' claim for uninsured motorist benefits. We affirm.
Appellant and her husband, Enrique, were passengers in a private van owned and driven by Francisco Valdes on February 13, 1995, when it was involved in an automobile accident with an uninsured motorist. At the time of the accident, it was undisputed below that Valdes was employed by Red Top Transportation which compensated him on a weekly basis for transporting Mrs. Almendral and other Medicaid passengers and their companions to doctors' offices for their respective appointments. Mr. Valdes was insured with appellee, Security National Insurance Company ("Security National") which provided him and his family members with uninsured and underinsured motorist coverage when the van was being used for personal purposes but excluded uninsured motorist coverage when Valdes was operating the van for business purposes for a fee. Specifically, the exclusion in the policy provided that:
We do not provide Uninsured Motorist Coverage for "bodily injury" sustained by any person ... [w]hile "occupying" "your covered auto" when it is being used to carry persons or property for a fee. This exclusion [] does not apply to a share-theexpense car pool.
*729 Valdes emphatically testified that he was fully aware that his policy with Security National did not make uninsured motorist coverage available while he was operating his van for Red Top Transportation for business purposes.[1]
As a result of their injuries sustained in the February 13, 1995 accident, the Almendrals submitted their respective claims for uninsured/underinsured motorist benefits to Security National on or about February 24, 1995. When Security National ultimately denied their claims,[2] based upon the aforementioned exclusion, the Almendrals filed a multi-count complaint and amended complaint against Security National. The Almendrals sought, among other things, a declaration of their rights to uninsured/underinsured motorist benefits under Security National's policy and damages for breach of the insurance contract. Security National filed its motion for summary judgment in the action below based upon the exclusionary language contained in the policy. The lower court granted this motion and this appeal followed.
On this appeal, the appellants first assert that the exclusionary provision contained in Security National's policy should be voided as against the public policy of this state. We disagree. "Uninsured vehicle (motorist) coverage is for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured vehicles because of bodily injury resulting therefrom." Pena v. Allstate Ins. Co., 463 So.2d 1256, 1258 (Fla. 3d DCA), review denied, 476 So.2d 672 (Fla. 1985); see also § 627.727(1), Fla. Stat. (1995). Toward this end, we have stated that the purpose of such coverage in Florida is to place the insured motorist in the same position with regard to liability insurance when he or she is injured by an uninsured motorist as the insured motorist would have been in if the uninsured motorist had obtained liability insurance. See Pena, 463 So.2d at 1258. We do not believe that the primary purpose of uninsured motorist coverage is frustrated at all where, as here, the insured driver (Valdes) made a knowing and informed decision to reject such coverage while operating his vehicle for business purposes. See generally Whitten v. Progressive Casualty Ins. Co., 410 So.2d 501, 503 (Fla.1982) (valid rejection of uninsured motorist coverage by named insured in the policy is binding on principle operator of the vehicle and any additional named insured in policy); Callard v. National Union Fire Ins. Co., 556 So.2d 1141, 1142 (Fla. 3d DCA 1989) (where the insured/employer knowingly rejected option to purchase greater coverage limits of uninsured motorist insurance, employee precluded from recovering in excess of policy limits); St. Paul Fire and Marine Ins. Co. v. Smith, 504 So.2d 14, 15 (Fla. 2d DCA) (uninsured motorist coverage unavailable under policy where city official testified he was aware of the availability of uninsured motorist coverage and made an affirmative rejection of it due to its cost), review denied, 511 So.2d 299 (Fla.1987); Compass Ins. Co. v. Woodard, 489 So.2d 1157, 1158 (Fla. 4th DCA) (where the named insured knowingly elected not to have uninsured motorist coverage equal to the liability limits, a permissive user is precluded from activating uninsured motorist coverage equal to liability limit), review denied, 500 So.2d 546 (Fla.1986); Del Prado v. Liberty Mutual Ins. Co., 400 So.2d 115, 116-17 (Fla. 4th DCA) (where named insured made informed rejection of uninsured motorist coverage, permissive driver of insured vehicle was not entitled to uninsured motorist coverage), review dismissed, 407 So.2d 1105 (Fla.1981).
The appellants next assert that even if the business exclusion in the policy is valid, it was completely inapplicable to appellant, Enrique Almendral, where he was not a fare paying passenger or medicaid patient in the insured vehicle at the time of the accident. *730 We find no merit to this argument. By the clear and unambiguous terms of the business exclusionary provision, except for car pool expenses, Valdes had no uninsured motorist coverage whenever his van was being used to transport any persons or property for a fee. The identity of the person(s) paying the fee or the status of the occupants in the van at the time are simply irrelevant.
The Almendrals finally assert that Security National is precluded from raising a coverage defense where it failed to resolve the coverage issue within sixty days of its notification of their loses as prescribed by the Claims Administration Statute, Section 627.426(2), Florida Statutes (1995)[3]. We similarly find no merit to this argument. It has been established that "[s]ection 627.426(2), by its express terms, applies only to a denial of coverage `based on a particular coverage defense....'" AIU Ins. Co. v. Block Marina Inv., Inc., 544 So.2d 998, 1000 (Fla.1989); see also State Farm Mutual Auto. Ins. Co. v. Hinestrosa, 614 So.2d 633, 636 (Fla. 4th DCA 1993). It is wholly inapplicable to a defense of no coverage. See AIU, 544 So.2d at 1000. The supreme court in AIU distinguished a "coverage defense" from a defense of no coverage thusly:
Therefore, we hold that the term "coverage defense," as used in section 627.426(2), means a defense to coverage that otherwise exists. We do not construe the term to include a disclaimer of liability based on a complete lack of coverage for the loss sustained. Under this construction, for example, if the insurer fails to comply with the requirements of the statute, it may not declare a forfeiture of coverage which otherwise exists based on a breach of a condition of the policy. However, its failure to comply with the requirements of the statute will not bar an insurer from disclaiming liability where a policy or endorsement has expired or where the coverage sought is expressly excluded or otherwise unavailable under the policy or under existing law.
Id.; see also Florida Physicians Ins. Co. v. Stern, 563 So.2d 156, 160-61 (Fla. 4th DCA 1990). Thus, where the uninsured motorist coverage sought by the Almendrals was expressly excluded by the terms of the policy, the insurer's failure to adhere to the requirements of section 627.426(2) cannot serve as a bar to preclude it from disclaiming liability.
Accordingly, for all of these reasons, we conclude that summary judgment was properly entered in favor of Security National and we affirm the same.
Affirmed.
NOTES
[1] At the time of the February 13, 1995 accident, Valdes was additionally insured under a commercial policy with Biscayne Insurance Company while he operated the van for business purposes, but this policy did not provide either personal injury protection benefits or uninsured motorist benefits for occupants of the van.
[2] According to the record, Security National paid P.I.P. benefits to Valdes and other occupants of the van who qualified for the same. The Almendrals, however, were deemed unqualified for P.I.P. benefits because they had household vehicles at their home.
[3] That statute provides that:

(2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
(a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation or rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and
(b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:
1. Gives written notice to the named insured by registered or certified mail of its refusal to defend the insured;
2. Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or
3. Retains independent counsel which is mutually agreeable to the parties. Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.