363 So.2d 818 (1978)
Chester W. HUTCHINS, As Personal Representative of the Estate of David T. Hutchins, a Deceased Minor, Appellant,
v.
Kelly F. MILLS et al., Appellees.
Nos. GG-490, HH-60.
District Court of Appeal of Florida, First District.
August 22, 1978.
Rehearing Denied October 30, 1978.
*819 Gardner Sharpe, Jr., of Billings, Frederick, Wooten & Honeywell, Orlando, for appellant.
Carle A. Felton, Jr., of Boyd, Jenerette, Leemis & Staas, Jacksonville, G. Kenneth Gilleland, Tallahassee, Robert L. Shevin, Atty. Gen., and Martin S. Friedman, Asst. Atty. Gen., for appellees.
PER CURIAM.
The litigation followed a tragic accidental shooting of the decedent by the defendant, Kelly F. Mills, while Mills was hunting in the Camp Blanding Wildlife Management Area in Clay County.
Mills, his motor vehicle liability insurance carrier, Great American Insurance Company, the State of Florida, the Florida Game and Fresh Water Fish Commission were named defendants. We are not concerned with other defendants in the pending appeals.
The trial court entered a final summary judgment in favor of Great American Insurance Company on the issue of coverage on Mills' truck. Plaintiff took an appeal.
The State of Florida and the Game and Fresh Water Fish Commission filed motion to dismiss the second amended complaint. The court granted the motion for lack of jurisdiction over the subject matter. After denial of petition for rehearing, plaintiff appealed.
The appeals were consolidated.
For consideration of the court of the summary judgment motion, the parties stipulated:
"On November 10, 1974, GREAT AMERICAN INSURANCE COMPANY insured KELLY F. MILLS under a policy of automobile liability insurance which provided liability coverage for a pick-up truck owned by the Defendant, KELLY F. MILLS which indemnifies for bodily injury (caused by accident) and "arising out of the ownership, maintenance or use of the automobile". That on the date of the accident, the Defendant, KELLY F. MILLS, was hunting deer and while standing in the bed of the said parked pick-up truck, in order to give him greater visibility in locating game, shot another hunter by accident. The truck was not in motion. Nothing about the maintenance or operation of the vehicle caused the accident or injury.
"The accident did not arise out of the inherent nature of the automobile as a motor vehicle."
The policy of insurance provides coverage for bodily injury or death of third parties caused by accident and "... arising out of the ownership, maintenance or use of the automobile". The trial judge ruled as a matter of law that the accident and resulting death "... did not arise out of the `ownership, maintenance, or use'" of the insured truck. We agree.
*820 Neither ownership nor maintenance here play any part in determining coverage. The basic issue is whether or not the language "arising out of the ... use" of the Mills truck affords coverage under the undisputed facts.
The appellant places emphasis on Fidelity & Casualty Co. of N.Y. v. Lott, 273 F.2d 500 (5th Cir., 1960). Here the insured while attempting to shoot a deer used the top of his parked automobile as a gun rest. A passenger in the vehicle was mortally wounded by the deflection of the discharge from the gun. The court held that the words "incident to and arising out of the use of a motor vehicle" would not be limited to situations when injury occurred either because of its operation or when standing after "normal use". We think this is a strained and unrealistic construction of the insuring phrase. The court's avenue of approach leading to coverage does not persuade us.
A decision we fully embrace is Norgaard v. Nodak Mutual Insurance Company, 201 N.W.2d 871 (N.D. 1972). The court's review of the authorities does impress us. Lott, supra, is severely criticized. In Norgaard a contrary conclusion was reached by following rational and logical reasoning.
In Norgaard the insurance company refused to defend an action brought against its insured. After judgment against the insured, he filed suit against the insurance company to recoup the amount of the judgment and certain legal expenses. The facts were not in dispute. Norgaard and three companions drove into the countryside in the insured vehicle for a bird hunt. While the car was stopped Norgaard used the roof of his automobile as a gun rest and discharged the gun. As the gun fired a companion, Baldock, while alighting from the automobile, was shot, the wound causing his death.
The trial court held that Baldock's injury and death "... did not result from the ownership, maintenance or use of the automobile ...". Hence, there was no coverage under the policy. The Supreme Court agreed saying: "It is our view that the death resulted not from the ownership, maintenance or use of the automobile, but from the use of the rifle, the rifle being an independent cause of Stanley's death." (P. 874)
The court had this to say concerning decisions relied upon by Norgaard:
"* * * Although those decisions may be somewhat distinguished upon the facts, we do not rest our opinion in this case upon such distinctions, but rather base our opinion upon the idea that "use", to result in liability on the part of the insurance carrier, must be such use as arises out of the inherent nature of the automobile."
It continued with the pertinent observation:
"In the instant case, the automobile was being used merely as a bench rest for the rifle. A fence post could have served the same purpose."
To fortify its attack on Fidelity & Casualty Co. v. Lott, supra, the court quotes from Roland H. Long's work, "The Law of Liability Insurance" (1972). He says the construction given by the Court of Appeal, Fifth Circuit, of the policy language "`arising out of the use of an automobile . . was both fallacious and latitudianarian'" (P. 895).
The opinion continued quoting Long on the phrase `arising out of':
"`The term is ordinarily understood to mean `originating from,' or `growing out of,' or `flowing from.' It does not require a finding that the injury was proximately caused by use of the automobile, but only that it arose out of the use. An injury does not arise out of the use of an automobile if it is directly caused by some independent act or intervening cause wholly disassociated from, independent of, and remote from its use.' Long, supra, § 1.22, pp. 1-57 and 1-58."
Again, Norgaard quotes from an annotation in 89 A.L.R.2d 153. It says the cases agree that where there is no causal connection or relation between the accident and use of the vehicle, coverage is absent.
*821 The court concluded that the use of the rifle constituted an independent and intervening cause of death so the incident was not covered by the policy.
We have referred frequently to the Norgaard decision for it is the most comprehensive and best discussion on the point before us that has come to our attention.
We hold that at the time of the injury causing death the "use" of Mills' vehicle was not such as arises out of the inherent nature of the motor vehicle. Further, that the use of the firearm by Mills constituted an independent cause of the accident.
Stated another way, there was no causal connection between use of the truck as a deer stand and the resulting death of the deceased.
We agree with the trial judge's conclusion and the authorities he cites.
The summary final judgment is therefore affirmed.
The other facet of the case is found in the claim against the State of Florida and its agency, Game and Fresh Water Fish Commission.
The accidental shooting and death of David T. Hutchins is alleged to have occurred on November 10, 1974. Suit was filed on September 15, 1976, without prior compliance with Section 768.28(6) F.S. Notice was not given the State until counsel's letter of January 24, 1977. The State's prior motions to dismiss the complaints apparently triggered counsel's late notice of claim.
The trial judge held that the mandate of the statute (768.28(6)) denied the Circuit Court jurisdiction. His order of dismissal recites absence of jurisdiction of subject matter for the required notice of claim had not been given prior to institution of the suit.
Prior to the effective date of F.S. 768.28(6) courts did not have subject matter jurisdiction of tort suits against the State and its agencies because they enjoyed sovereign immunity pursuant to Article X, Section 13, Florida Constitution. (Circuit Court of Twelfth Judicial Circuit v. Department of Natural Resources, 339 So.2d 1113 (Fla. 1976)). However, by enacting F.S. 768.28 the legislature provided for waiver of sovereign immunity in tort actions. Therefore, pursuant to that statute, courts do now have subject matter jurisdiction to consider suits which fall within the parameters of the statute.
F.S. 768.28(6) is analogous to Section 95.241, Florida Statutes 1973, now revised, which required a written notice of claim to be given a municipality within ninety days of the occurrence or discovery of certain injuries as a prerequisite to the maintenance of an action against the municipality for those injuries. In Rabinowitz v. Town of Bay Harbor Islands, 178 So.2d 9 (Fla. 1965), the Supreme Court held that a municipality may waive or be estopped to assert the benefit of claim notice statutes such as Section 95.241, Florida Statutes 1973. Under that rationale, it follows that under certain conditions, the state or its agencies might be deemed to have waived the claim notice requirements of 768.28(6). If it may be so waived it cannot be jurisdictional.
However, since there are no allegations and no evidence of waiver or estoppel in this case, the trial court correctly dismissed the claim against the State and the Commission. We reach such result not because the trial court lacked subject matter jurisdiction of the claim but because appellant failed to plead a compliance with F.S. 768.28(6) which is in the nature of a condition precedent and which must be plead by appellant in order to state a cause of action. 25 Fla.Jur. Pleadings § 57, p. 222.
The appellant contends that a wrongful death action is exempt from Section 768.28 Florida Statutes. If we assume the position is correct, which we gravely doubt, the plaintiff has no right of action against the State. Only with the limited waiver of sovereign immunity found in the statute does he have a vehicle into court. Florida courts have often construed Article X, Section 13, Florida Constitution, as providing *822 complete sovereign immunity unless waived by the legislature or constitutional amendment. See Circuit Court of Twelfth Judicial Circuit v. Department of Natural Resources, (Supra).
After plaintiff's complaints were dismissed for failure to exhaust the statutory administrative remedies he, without leave of court, filed a third amended complaint and a motion to abate. He sought by the motion to abate the action. His reason, he says, was to allow the State and its agency the opportunity to consider the claim. Obviously, this was an empty gesture made for the purpose of attempted revival of a judicially dead litigation. The motion is completely without merit.
The order of the trial court dismissing the complaints and denial of the motion to abate is hereby affirmed.
McCORD, C.J., BOYER, J., and McLANE, RALPH M., Associate Judge, concur.

ON PETITION FOR REHEARING
PER CURIAM.
Upon reconsidering the verbiage of our foregoing opinion we determine that we should not and do not, at this time, "fully embrace * * * Norgaard v. Nodak Mutual Insurance Company, 201 N.W.2d 871 (N.D. 1972)." That opinion and the authorities therein cited are most persuasive and helpful. However, the facts of that case are distinguishable from those sub judice and while we yet adhere to the conclusion reached in our foregoing opinion we are not prepared at this time, on considering the facts of this case, to fully embrace what we consider to be a further step as announced in the Norgaard decision. In the case sub judice the pick-up truck had absolutely no connection with the accident giving rise to this controversy. Mills was not driving the pick-up truck nor does it appear that it was being used incident to the hunting, except that Mills was merely standing in the bed of the truck for the purpose of obtaining greater visibility. He could just as well have been standing on a ladder, a stump, a log or he could have been up in a tree. Under those circumstances the use of the vehicle was not related to the accident. However, had the hunters been riding in the truck looking for game, and then paused to shoot, quite a different situation would have been presented. We are not therefore prepared at this time, those not being the facts of this case, to hold that were those the facts a different result would or would not be required. We will leave that question which is not now before us for a later day.
Accordingly, we yet affirm and while we consider the Norgaard decision as persuasive precedent, we do not "fully embrace" either the decision or the totality of its reasoning.
McCORD, C.J., and BOYER, J., concur.
McLANE, RALPH M., Associate Judge, dissents and adheres to the original opinion.