IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MICHAEL HALL and )
SUSAN HALL, )
)
Plaintiffs, )
)
v. ) C.A. No. N17C-08-028 CEB
MICHAEL RUSSELL d/b/a )
MIKE'S TOWING, )
)
Defendant. )

Submitted: July 16, 2020
Decided: August 26, 2020

**MEMORANDUM OPINION**

Defendant's Motion *in Limine*
to Exclude Expenses Under the PIP/UIM
Exclusion of 21 *Del C*. § 2118(h).
**DENIED.**

Robert D. Goldberg, Esquire, BIGGS & BATTAGLIA, Wilmington, Delaware. Attorney for Plaintiffs.

Louis J. Rizzo, Jr., Esquire, REGER RIZZO & DARNALL LLP, Wilmington, Delaware. Attorney for Defendant.

**BUTLER, J.**

Surely the Plaintiff had no idea, while working under a vehicle to replace a clutch one day, that he would propel the parties into a labyrinth of clauses and subclauses in insurance law. But lest we get ahead of ourselves, the story goes like this.

## FACTUAL BACKGROUND

It seems that Michael Hall ("Plaintiff" or "Hall") was an auto mechanic and was asked by Defendant Michael Russel ("Defendant") doing business as "Mike's Towing Company" to do some transmission work on an unregistered, uninsured Ford F-150 owned by Defendant. The Complaint says the following: "The truck was elevated for servicing by Defendant who had placed the front wheels of the truck on top of ramps in order that Mr. Hall could gain access beneath it. In the process of elevating the truck, and unbeknownst to Mr. Hall, Defendant neglected to set the handbrake. In addition, he failed to block the truck wheels to prevent the truck from moving forward. As a result, while Mr. Hall was beneath the truck, it moved forward and the front wheels rolled off the ramps, pinning Mr. Hall's legs beneath the truck and causing him serious injury including injuries to both his legs and his knees in particular. Defendant had to use a jack to raise the truck and free Mr. Hall, who was trapped beneath the truck for several minutes."

Now, exactly how badly Mr. Hall was injured and who was negligent and in what manner are all matters left for trial. The parties have moved forward with

1

discovery and each has a good idea what the other is saying. That is not where this gets tricky. Here is where it gets tricky.

First, recall that the truck that rolled was not insured. It was, as they say, an uninsured auto. Plaintiff, the mechanic, did have an automobile that was insured. It was presumably parked outside in the lot when all this happened.

By operation of 18 *Del. C.* § 3902, any policy of auto insurance must have a provision that insures the policy holder against injuries from accidents involving uninsured autos or hit and run drivers from whom no recovery is possible. This is called "uninsured motorist" – or UIM – coverage even though it actually insures damage caused by the uninsured vehicle and perhaps should be called "uninsured vehicle" coverage. UIM coverage must be of the same value as the "normal" accident – or PIP coverage on the insured vehicle. So a policy with the statutory minimum of $15,000 in PIP coverage must also have at least $15,000 in UIM coverage. Plaintiff did indeed have the required PIP and UIM coverage on his personal vehicles.

We know that generally speaking, when one purchases insurance to insulate ones' self from the expenses of an unforeseen event, the happening of the event and procurement of insurance will not inure to the benefit of the tortfeasor. The so-called "collateral source rule" prohibits the tortfeasor from setting off the plaintiff's privately purchased insurance proceeds against the plaintiff's recoverable damages.

2

While some may argue this permits the plaintiff to enjoy a "double recovery," that is viewed as preferable to the alternative of permitting the tortfeasor/defendant to profit (by setting off his own liabilities) from the tort victim/plaintiff's foresight in obtaining insurance.

One might think that this same principle would apply in auto insurance law; the tortfeasor should not be allowed to set off the proceeds of the driver's privately purchased – albeit statutorily mandated – auto insurance against the damages caused by the tortfeasor. But that thinking would be incorrect in the case of PIP/UIM coverage. As so often happens with legislation, what came out of the General Assembly is a compromise among the various competing interests.

In passing the automobile financial responsibility law, the General Assembly worked out the collateral source issue differently from the common law. It provided in section 2118(h) that:

> Any person *eligible for benefits*…is precluded from pleading or introducing into evidence …those damages for which compensation is *available* under paragraph (a)(2) or (3) of this section...*whether or not such benefits are actually recoverable.*[1]

So while the collateral source rule would permit a plaintiff to plead and "board" all of his medical expenses, even those paid, for example, by private health insurance, an auto accident plaintiff may not plead and board those expenses eligible

---

[1] 21 *Del. C.* § 2118(h) (emphasis added).

to be covered under PIP/UIM, regardless whether they are actually paid or even requested.[2]

Defendant has moved *in limine* to preclude Plaintiff from introducing whatever damages Plaintiff *could have* recovered under his UIM policy for his personally owned automobile despite the fact that he did not make such a request. Since Hall had $15,000 in PIP/UIM coverage on his personal vehicle, Defendant argues that Plaintiff is precluded from introducing the first $15,000 in medical bills to the jury as damages.

## ANALYSIS

Aside from the rather curious policy proposition that auto mechanics are to look to their personal vehicle's UIM policies for recompense when they are injured while repairing cars in a shop, the Defendant's position raises more arcane issues of statutory interpretation. For example, 21 *Del. C.* § 2118(a)(2)(c) – referenced above in section 2118(h) – says that the minimum insurance required must be available to any person "injured in an accident involving such motor vehicle." But what is an "accident involving such motor vehicle" for which insurance is required?

---

[2] For example, in *Mullins v. Klase*, 2001 WL 659491 (Del. Super. May 31, 2001), the Court prohibited Mullins from "boarding" his PIP damages despite the insolvency of his PIP carrier and consequent inability to recover the expenses.

This being a motion *in limine*, perhaps it is unnecessary to examine the full lineage of cases involving this phrase, but suffice it to say this is not the first. Some discussion of the evolution is helpful.

In *Nationwide General Insurance Co. v. Royal*,[3] a plaintiff sought UIM coverage from his own policy when he was the victim of a drive by shooting by an uninsured motorist. The Court adopted a three-part test originally formulated by the Minnesota Supreme Court to determine whether the injury arose out of the "operation, use or maintenance" of a motor vehicle. The factors are first, whether the vehicle was an "active accessory" in causing the injury. An active accessory is one that is "something less than proximate cause and something more than the vehicle being the mere situs of the injury."[4] The second question is whether an act of independent significance broke that causal link between the use of the vehicle and the injuries inflicted. Finally, the *Nationwide* Court said it must examine whether the vehicle was being used for transportation purposes.[5] In the *Nationwide* case, Mr. Royal was unsuccessful in convincing the Delaware Supreme Court that he met these three criteria and UIM coverage was disallowed.

---

[3] 700 A.2d 130 (Del. 1997).
[4] *Id.* at 132.
[5] *Nationwide*, 700 A.2d at 132. *See Continental Western Insurance Co. v. Klug*, 415 N.W.2d 876, 878 (Minn. 1987).

The "used for transportation purposes" criterion in *Nationwide* was specifically abrogated in the later case of *Kelty v. State Farm Mutual Auto Insurance Co.*[6] This was a "you can't make it up" case in which some do it yourselfers tried to trim the branches off a tree and avoid the encroaching power lines by running a rope from the branches to the trailer hitch on a pick up truck. Really, what could go wrong? When the truck pulled forward, the rope snapped, the branches struck the power lines, Kelty got knocked out of the tree by the recoil of the rope, and he sued. The pickup was an "active accessory:" nothing else but the truck's movement caused the rope to snap, the branch to break and Kelty to fall, so the only problem was that the truck was not really being used for transportation purposes. The Court found that it had improperly imposed a "transportation purposes" requirement on "arising out of" claims and Kelty was therefore able to recover PIP benefits notwithstanding that the vehicle was not being used for transportation purposes.

Perhaps an auto mechanic case was inevitable, and one came to Superior Court in a case captioned *Sierra v. Allstate Property & Casualty Insurance Co.*[7] In *Sierra*, an auto mechanic was injured while pulling a chain hoist and holding onto the car with one hand. Judge Parkins wrote that "Here the customer's car was not moving and was not being used for transportation at the time of the accident. Indeed,

---

[6] 73 A.3d 926 (Del. 2013).
[7] 2013 WL 2636043 (Del. Super. June 12, 2013), *aff'd*, 2014 WL 134837 (Del. 2014).

6

there is no particular significance to the fact that Plaintiff was touching a vehicle at the time he hurt his lower back reaching for a chain. His hand could have been touching anything and the injury would still have occurred."[8] The Court concluded that the vehicle did not play an active role in the accident and it was not an "accident involving a motor vehicle" within the meaning of the statute. The *Sierra* decision found that the "active accessory" rationale of the *Nationwide* decision equally applicable to the term "accident involving such motor vehicle" under section 2118.[9]

"Active accessory" cases are more common than one might think, perhaps owing to the ubiquity of automobiles in American life. In *Jarrett v. Titan Indemnity Co.*,[10] the plaintiff was standing next to his car, keys in hand, when a tree fell on him and his car. He sought PIP benefits from his auto insurer. Judge Witham decided Jarrett's vehicle was not an active accessory to the tree falling on him. In *Jones v. Delaware Transit Corp.*,[11] Jones was working cleaning out a bus when the hose attached to a vacuum caused her injury. She sought PIP benefits from DART, with the Court ruling that the bus was not an active accessory to the hose mishap. In *Friel v. Hartford Insurance Co.*[12] the Plaintiff claimed injuries when he picked up a chain attached to a pallet on the back of a truck. Again, the Court ruled that the injury was

---

[8] *Id.* at *2.
[9] *Id.*
[10] 2017 WL 6343552 (Del. Super. Dec. 11, 2017).
[11] 2016 WL 5948494 (Del. Super. Oct. 13, 2016).
[12] 2014 WL 1813293 (Del. Super. May 6, 2014).

not caused by the operation of the vehicle. The Court used this rather pithy synopsis: "The injury did not occur by virtue of the inherent nature of using a motor vehicle."[13]

If we are to find a harmonizing principle differentiating when the vehicle was a "mere situs" or an "active accessory" to an injury, the showing that the injury occurred by virtue of the "inherent nature" of a motor vehicle may be it. Indeed, in *Kelty*, the Supreme Court said "Read in context, this [inherent nature] language addresses the necessary causal relationship between the injury and the vehicle, an inquiry encompassed within the *Klug* test's "active accessory" prong.[14] So while *Kelty* may have excised *Klug's* "used as transportation" requirement, we see a somewhat similar principal preserved in the necessity of showing that the injury arose by virtue of the "inherent nature" of a motor vehicle (whether used as transportation or not).

The truck in *Kelty* was not being used for transportation purposes: it was being used to pull branches away from a power line. But at least it was being used for

---

[13] *Id.* at *5 (citing *Kelty, supra* note 7, at 931 n. 29). This "inherent nature" language actually comes from a Superior Court decision in *Gray v. Allstate Ins. Co.*, in which the Court said "the showing must be that the injury occurred by virtue of the inherent nature of using the motor vehicle." 668 A.2d 778, 780 (Del. Super. 1995) (citing *Dickerson v. Continental Casualty Co.,* Del.Super., C.A. No. 82C-MR-8, Poppiti, J. (Sept. 1, 1983) (citing *Hutchins v. Mills,* Fla.Dist.Ct.App., 363 So.2d 818, 821 (1978), *cert. denied,* Fla.Supr., 368 So.2d 1368, (1979); *Padron v. Long Island Ins. Co.,* Fla.Dist.Ct.App., 356 So.2d 1337, 1338-39 (1978)).
[14] *Kelty*, 73 A.3d at 931, n. 29.

something that motor vehicles might be used for. The truck had functioning wheels, an engine, drive train, etc. such that it could be used as a vehicle. Here, the pickup truck was being serviced. It was fully disabled. It was not being used for anything at all.

The Defendant can certainly point to the fact that the pickup rolled off the ramp, which is something that cars do. But when it rolled, its transmission was disconnected from its engine. And lots of heavy things roll when they are not chocked. Here, it was not the pickup's inherent nature as a motor vehicle that caused it to roll, it was the fact that it had wheels, was put up on an angle using ramps and was not chocked.

So whether we look at the problem with the Defendant's argument as one of "active accessory" or "independent causation" – the two necessary ingredients according to the *Nationwide/Kelty* line of cases – we end up in the same place: it was not a motor vehicle being used consistent with its inherent nature as a motor vehicle.

The Court does not believe the injury in this case was sustained by virtue of the use of a vehicle as a vehicle. It was essentially a heavy pile of metal when it rolled off the ramp. The only thing working on it, unfortunately, was its wheels. The Court therefore holds that Defendant may not avail himself of the insulation of the first $15,000 in Plaintiff's damages by resort to section 2118(h).

## CONCLUSION

For the reasons stated above, Defendant's Motion *in Limine* is hereby

**DENIED.**

    **IT IS SO ORDERED.**

Judge Charles E. Butler