NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| WALTER M. ELROD and DONNA F. ELROD, | ) ) | Supreme Court No. S-19061 |
| Appellants, | ) ) | Superior Court No. 4FA-20-02597 CI |
| v. | ) ) | MEMORANDUM OPINION AND JUDGMENT* |
| CHRISTMAS IN ICE, INC. and USAA GENERAL INDEMNITY COMPANY, | ) ) ) | No. 2115 – October 22, 2025 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Brent E. Bennett, Judge.

Appearances: Michael W. Flanigan, Flanigan & Bataille, Anchorage, for Appellants. Marc G. Wilhelm, Richmond & Quinn, Anchorage, for Appellees.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

## I.    INTRODUCTION

A Florida man attending a New Year's Eve fireworks display in North Pole was blinded, allegedly by errant fireworks debris. The fireworks were launched from a flatbed trailer that was uninsured. The man and his wife sought coverage for the injury under the uninsured motorist (UM) provision of their own automobile insurance

---

\*        Entered under Alaska Appellate Rule 214.

policy, which had been issued in Florida. The insurance company denied the claim, contending that the injury did not arise out of the use of a motor vehicle, the standard for UM coverage under Florida law.

The couple filed suit in Alaska against various parties connected with the incident, including the insurance company that denied their UM claim. The superior court granted summary judgment to the insurance company. It reasoned that because the trailer was merely the place from which the fireworks were launched, the trailer did not causally contribute to the injury as required by Florida law to trigger UM coverage. We agree with the superior court's analysis of Florida law and affirm its judgment.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

Florida residents Walter and Donna Elrod attended a fireworks event hosted by Christmas in Ice, Inc. (CII) in North Pole on December 31, 2018. To facilitate what was billed as a "Holiday Sparktacular" event, CII borrowed a flatbed trailer. CII's employees placed a layer of snow on the trailer and then placed boxes of fireworks on top. As the clock struck midnight, the employees lit the fuses on the boxes of fireworks. According to Walter, a mortar from one of the fireworks struck him in the eye and blinded him.[1] Walter incurred significant medical debt as a result of his injury.

At the time of the incident, the Elrods maintained an automobile insurance policy issued by USAA General Indemnity Co. (USAA) in Florida. The policy's UM coverage provision provides in relevant part:

> A. **We** will pay compensatory damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of [**bodily**

---

[1]   USAA generally disputes that Walter Elrod's eye injury was caused by an errant firework. For the purposes of this appeal, we draw all reasonable factual inferences in the Elrods' favor. *See Methonen v. Stone*, 941 P.2d 1248, 1250 (Alaska 1997) (reviewing grant of summary judgment by drawing all reasonable inferences in favor of opposing party).

**injury**] sustained by a **covered person** and caused by an auto accident . . . .

    B. The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the **uninsured motor vehicle**.

The policy defines "uninsured motor vehicle" as "a land motor vehicle or **trailer** of any type . . . [t]o which no liability bond or policy applies at the time of the accident."[2] "Auto accident" is an undefined term.

The Elrods filed a claim with USAA, seeking to recover for Walter's injury under the UM coverage provision. USAA denied the claim, asserting that his injury was not caused by an auto accident.

**B.    Proceedings**

The Elrods filed suit in Alaska against various people and entities connected with the incident. The Elrods also sued USAA, again seeking coverage for the incident under the UM provision of the automobile insurance policy.

The Elrods' claims against most parties were resolved by settlement, dismissal, or default. Only their claim against USAA remained.

The Elrods moved for partial summary judgment against USAA, arguing that Walter's injury was covered under the UM provision of their policy because it "originate[d] or flow[ed] from the use" of the uninsured trailer.

USAA opposed the Elrods' motion for partial summary judgment and filed a cross-motion for summary judgment against the Elrods. USAA maintained that Walter's injury was not covered because use of the stationary trailer as a platform to launch fireworks did not qualify as the " 'use' of a motor vehicle" under the UM provision.

---

[2]    The policy provides alternative definitions of an "uninsured motor vehicle" that are not relevant to this case.

The superior court agreed with USAA, concluding that Walter's injury did not "arise out of the ownership, maintenance, or use" of the uninsured trailer. The court looked to Florida case law interpreting the policy's phrase " 'arising out of the ownership, maintenance, or use' of a motor vehicle." It concluded that this standard "does not require a showing of proximate cause between the accident and the use of the car," but requires "a causal connection or relation between the two for liability to exist." The court concluded that this standard applied "regardless if intentional or negligent behavior caused the incident." The court then identified two categories of relevant Florida cases. In the first category, where the loss was caused in some way by the use of the vehicle, coverage was provided. In the second category, coverage was denied because the vehicle was merely the site of the accident.

The superior court concluded that the undisputed facts of the Elrods' case were most similar to cases where the vehicle was the mere site of the incident. The court noted that the trailer had been used primarily to transport blocks of ice for the event and had not been used to transport fireworks. It explained that the CII employees' use of the "trailer as a platform rather than crates or a stage" was "merely fortuitous," noting that the injury "could have occurred anywhere they set off the fireworks." The court concluded that the fireworks were "an independent and intervening cause of injury separate from the trailer" and ruled that the Elrods' automobile policy did not cover Walter's injury. It granted summary judgment in favor of USAA.

The Elrods appeal.

## III.  STANDARD OF REVIEW

We review a grant of summary judgment de novo, reading the record in the light most favorable to the opposing party and drawing all reasonable inferences in its favor.[3] "Summary judgment is proper if there is no genuine factual dispute and the

---

[3]  *Methonen*, 941 P.2d at 1250.

moving party is entitled to judgment as a matter of law."[4]  The correct interpretation of insurance policy language is a question of law that we review de novo.[5]

## IV.   DISCUSSION

In this case we consider whether Walter Elrod's eye injury arose out of the use of a motor vehicle for purposes of Florida law and was therefore covered under the UM provision of the Elrods' automobile insurance policy.[6]  The precise test under Florida law for determining whether an injury arose out of the use of an uninsured motor vehicle is not entirely clear.  We begin our analysis by describing our understanding of the overarching rules pertaining to UM coverage under Florida law.  We then apply those rules, comparing this case to Florida cases with similar facts.

### A.    Under Florida Law, An Injury Arises Out Of The Use Of A Motor Vehicle For Purposes Of UM Coverage If There Is Some Causal Connection Between The Vehicle's Use And The Injury.

The Elrods are entitled to UM coverage under their policy if Walter Elrod's injury "arise[s] out of the ownership, maintenance, or use of the uninsured motor vehicle."  Although the quoted phrase has been interpreted many times by Florida

---

[4]   *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 757 (Alaska 2008).

[5]   *Downing v. Country Life Ins. Co.*, 473 P.3d 699, 704 (Alaska 2020).

[6]   The superior court considered the question of which law to apply in this case. The policy does not contain a choice of law provision.  To resolve choice-of-law questions, we often refer to the Restatement (Second) of Conflicts.  *Palmer G. Lewis Co. v. ARCO Chem. Co.*, 904 P.2d 1221, 1227 (Alaska 1995).  Under the Restatement, "[t]he rights and duties of the parties . . . are determined by the local law of the state [that] . . . has the most significant relationship to the transaction and the parties." RESTATEMENT (SECOND) OF CONFLICT OF L. § 188(1) (A.L.I. 1971).  Relevant factors include:  "the place of contracting," "the place of negotiation," "the place of performance," "the location of the subject matter of the contract," and "the domicil, residence, . . . and place of business of the parties."  *Id.* § 188(2).  After considering several of these factors, the superior court determined that Florida law controls the interpretation of the insurance policy.  The parties do not challenge that conclusion on appeal.

courts,[7] the precise meaning of the phrase, and the nature of the connection between the motor vehicle's use and the injury that must be shown to obtain coverage, remain somewhat unclear.[8]

This uncertainty is reflected in the parties' positions on appeal. Each side advocates for a different legal test for determining when an injury arises out of the use of a motor vehicle for purposes of UM coverage. The Elrods argue that coverage is triggered so long as there is "some nexus"[9] between the injury and the use of the vehicle. Under this approach, the fact that the fireworks were shot from the trailer is a nexus that is sufficient for UM coverage. USAA, by contrast, advocates for a three-prong test from a leading treatise quoted in the Florida Supreme Court's decision in *Race v. Nationwide Mutual Fire Insurance Co.*, which appears to require a more substantial causal connection for UM claims.[10] In our view, this test was described in dicta and does not seem to be the established test for UM claims under Florida law. What does seem clear, however, is that some causal connection between the use of the vehicle and the injury is required, meaning that there must be more than a mere "nexus" between the use of the motor vehicle and the injury.

In *Race* the Florida Supreme Court considered the standard for determining when an injury arises out of the use of a motor vehicle for purposes of UM

---

[7] *Nat'l Merch. Co. v. United Auto. Ass'n*, 400 So. 2d 526, 530 (Fla. Dist. App. 1981) (noting "virtual parade of Florida auto insurance cases dealing with clauses insuring against injury 'arising out of the ownership, maintenance or use' of" vehicle).

[8] *See* 6 THOMAS D. SAWAYA, FLORIDA PERSONAL INJURY LAW AND PRACTICE § 3:12 (2024-2025 ed. 2024) (noting Florida intermediate courts "agree . . . that proximate cause is not a requisite showing to recover UM benefits" but remain uncertain what standard to apply).

[9] *See Gov't Emps. Ins. Co. v. Novak*, 453 So. 2d 1116, 1119 (Fla. 1984).

[10] 542 So. 2d 347, 349 (Fla. 1989) (quoting 6B JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4317, at 367-69 (Buckley ed. 1979)).

coverage.[11] The court considered whether a motorist was entitled to UM coverage for "injuries received from an uninsured motorist's intentional assault at the scene of a prior automobile accident."[12] Its analysis revolved around the distinction between personal injury protection (PIP) and UM insurance coverage.[13] Although both forms of coverage apply to injuries "arising out of" the use of a motor vehicle, the court concluded that due to differences in the nature of the coverage, different coverage standards applied.[14]

The court in *Race* made three holdings. First, it held that UM coverage, unlike PIP, can apply to injuries caused by intentional acts so long as the acts are "accidental" when "viewed from the eyes of the innocent victim."[15] Second, the court rejected the "liberal" PIP standard for determining when an accident "arises" out of the use of the automobile: "while there must be some nexus between the motor vehicle and the injury, the automobile itself need not cause the injury."[16] Rather, the court reasoned that the "arising out of" standard for UM coverage should be interpreted the same way as for general automobile liability coverage.[17] Third, the court concluded that the

---

[11] *Id.* at 347.

[12] *Id.*

[13] *Id.* at 348.

[14] *Id.* at 349.

[15] *Id.* at 348-49 (creating "an exception to the general principle that UM coverage can never be broader than the automobile liability coverage it is intended to replace").

[16] *Id.* (citing *Gov't Emps. Ins. Co. v. Novak*, 453 So. 2d 1116, 1119 (Fla. 1984)).

[17] *Id.* at 349 (reasoning that "UM coverage is 'statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage prescribed by the Financial Responsibility Law" (quoting *Mullis v. State Farm Mut. Auto. Ins. Co.*, 252 So. 2d 229, 237-38 (Fla. 1971))).

connection between the victim's injury and the assailant's motor vehicle was "too tenuous to provide UM coverage."[18]

In reaching its second conclusion, the *Race* court quoted an insurance treatise describing three "interesting rules" to determine an insurer's liability for accidents arising out of the use of a motor vehicle: (1) "[t]he accident must have arisen out of the inherent nature of the automobile, as such"; (2) "[t]he accident must have arisen within the natural territorial limits" of the vehicle "and the actual use, loading, or unloading must not have terminated"; and (3) the vehicle "must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury."[19] USAA argues the *Race* decision established these rules as the test for UM coverage under Florida law.

But it is not clear to us that the Florida Supreme Court meant to enshrine the treatise's three "interesting rules" as the definitive test for UM coverage under Florida law. Despite quoting the treatise at length, the decision does not apply the treatise's three rules to the particular facts of the case.[20] And the court's conclusion that the link between the injury and the use of the motor vehicle was "too tenuous" follows an extended discussion of Florida precedents using analyses that do not precisely mirror the treatise's rules.[21]

We are not the only ones uncertain whether the *Race* decision intended to enshrine the treatise's three-part test into law. A justice concurring in the decision noted that she could not "discern from the majority opinion precisely what test will control

---

[18] *Id.* at 351.

[19] *Id.* at 349 (quoting 6B JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4317, at 367-69 (Buckley ed. 1979)).

[20] *Id.* at 349-51.

[21] *Id.*

this issue in the future."[22] And Florida's intermediate appellate courts and federal district courts applying Florida law have acknowledged uncertainty over the proper standard for UM claims.[23] For these reasons, we are inclined to view the three-part test as dicta.

But it seems clear under Florida law that, for an injury to arise out of the use of a motor vehicle for purposes of UM coverage, there must be something more than a "mere nexus" between the injury and the vehicle. As explained above, the *Race* court rejected a "liberal" standard for UM claims that would require only "some nexus" but no causal connection.[24] And in concluding that the injury at issue did not trigger UM coverage, the *Race* court reasoned: "[t]he most that can be said is that the driving of the uninsured motorist which caused the accident created an atmosphere of hostility between the parties" but had "nothing to do" with the claimant's injuries.[25] Those injuries occurred several minutes later when the assailant thought the victim was reaching for a gun.[26] Therefore, we infer from the court's analysis that the use of the vehicle must contribute directly to the injury in some way to satisfy the causal standard for UM claims. With this general rule in mind, we proceed to determine whether, according to Florida law, there is more than a mere "nexus" between the uninsured trailer and Walter Elrod's injury by examining Florida decisions with similar fact patterns.

---

[22]   *Id.* at 351 (Barkett, J., concurring in result).

[23]   *See* SAWAYA, *supra* note 8, § 3:12 (noting Florida intermediate appeals courts "agree . . . that proximate cause is not a requisite showing to recover UM benefits" but remain uncertain what standard to apply); *Allstate Ins. Co. v. Safer*, 317 F. Supp. 2d 1345, 1356 (M.D. Fla. 2004) (explaining that "*Race* test" had "not been uniformly applied in Florida case law").

[24]   *Race*, 542 So. 2d at 349.

[25]   *Id.* at 351.

[26]   *Id.*

**B.    The Elrods Failed To Show A Sufficient Causal Connection Between The Trailer And The Injury To Trigger UM Coverage.**

The superior court concluded that CII's use of the trailer was incidental to the Elrods' injury, noting the injury could have occurred anywhere the employees chose to launch the fireworks. The court discerned a distinction in Florida law between cases in which the vehicle's use contributed in some way to the injury — such as by transporting the item that caused the injury,[27] by being used to load or unload the item that caused the injury,[28] or where the vehicle's motion contributed to the injury[29] — and cases in which the vehicle was the "mere situs" of the injury, such that the injury did not "arise out of" the use of the vehicle.[30] The court reasoned that the Elrods' case fell within the second category of cases, where the vehicle was merely the site of the injury. Therefore, it concluded, Walter Elrod's injury did not arise out of the use of the vehicle for purposes of UM coverage under Florida law.

The court's approach is persuasive, and we affirm its conclusion. Our review focuses primarily on cases in which firearms were shot from vehicles. Both

---

[27]    *See, e.g.*, *Nat'l Indem. Co. v. Corbo*, 248 So. 2d 238, 241 (Fla. Dist. App. 1971) (providing coverage for dog bite in stationary vehicle used to transport dog); *Nat'l Merch. Co. v. United Serv. Auto. Ass'n*, 400 So. 2d 526, 533 (Fla. Dist. App. 1981) (per curiam) (covering death caused by ingestion of medications in vehicle primarily used to transport medication).

[28]    *See, e.g.*, *Pomerantz v. Nationwide Mut. Fire Ins. Co.*, 575 So. 2d 1311, 1312-13 (Fla. Dist. App. 1991) (covering injury caused when tree limb shattered windshield of truck used to load logs).

[29]    *See, e.g.*, *Valdes v. Smalley*, 303 So. 2d 342, 345 (Fla. Dist. App. 1974) (covering injury caused by mug thrown from vehicle); *Carpenter v. Sapp*, 569 So. 2d 1291, 1292-93 (Fla. Dist. App. 1990) (providing coverage for damage caused by cattle that had escaped overturned trailer).

[30]    *E.g.*, *Watson v. Watson*, 326 So. 2d 48, 49 (Fla. Dist. App. 1976) (declining coverage for death caused by accidental discharge of firearm as decedent removed gun from under seat of car).

firearms and fireworks involve projectiles shot by a person, usually (though not always) intentionally.

At the outset, we reject the Elrods' argument that we should exclude from consideration cases involving intentional torts and cases predating the *Race* decision.

As to the first category, the Elrods argue that the *Race* decision's causation holding was limited to cases involving intentional torts, leaving injuries arising from negligent conduct subject to a less demanding causation standard. We do not read the *Race* decision this way. It is true that *Race* itself involved an intentional shooting and that some of the decisions it cites involved intentional conduct as well. But no such limitation on the causation standard is expressed in the decision.[31] And its causation analysis prominently features a case involving a purely accidental shooting, *Watson v. Watson*.[32] So the Elrods' narrow reading of *Race* is not persuasive.

As to the second category, the Elrods argue that older cases involving shooting injuries, like *Watson*, have been abandoned by cases adopting a more "modern, liberal" approach to UM coverage, exemplified by the *National Merchandise Co.* decision from 1981.[33] This too is unpersuasive. To start, *National Merchandise Co.* relied on older cases like *Watson* to reach its holding.[34] And again, the *Race* decision, published in 1989, cited the *Watson* decision approvingly as "squarely address[ing]" the issue raised in *Race*.[35] The *Race* decision quoted the *Watson* court's reasoning: "This does not require a showing of proximate cause between the accident and the use of the car, but there must be a causal connection or relation between the two for liability

---

[31]    *See Race*, 542 So. 2d at 348-51.

[32]    326 So. 2d 48, *quoted in Race*, 542 So. 2d at 350.

[33]    *Nat'l Merch. Co. v. United Serv. Auto. Ass'n*, 400 So. 2d 526, 533 (Fla. Dist. App. 1981) (per curiam).

[34]    *Id.* at 532.

[35]    *Race*, 542 So. 2d at 350.

to exist."[36]  It also quoted the *Watson* court's conclusion that the accident, which occurred when a person cleaning a car shot himself accidentally while removing a pistol stored below the seat, did not have a sufficient causal connection for coverage because the car was "merely the physical situs" of the accident, which "could have occurred anywhere the pistol was located."[37]  We see no indication that the reasoning of earlier decisions like *Watson* has been expressly or impliedly rejected.  To the contrary, the *Race* decision seems to endorse the reasoning in *Watson* that some causal connection is required beyond the fact that the vehicle is the place where the shooting occurred.[38]

Indeed, the *Watson* decision is consistent with the general tenor of relevant cases in holding that UM coverage requires something more than the vehicle being merely the place where the shooting occurred.  Similar to the *Watson* decision is *Hutchins v. Mills*, in which a man was mistakenly shot by a hunter who was using his truck as a firing platform.[39]  A Florida intermediate appeals court denied coverage because the truck's use as a firing platform was not a use that arose out of the "inherent nature" of the motor vehicle, and "there was no causal connection between the use of the truck as a deer stand and the resulting death of the deceased."[40]  The court concluded that the gun "constituted an independent cause of the accident."[41]  On rehearing the court affirmed its decision, concluding that the hunter "could just as well have been standing on a ladder, a stump, a log or . . . up in a tree" when he fired the rifle.[42]

---

[36]  *Id.*

[37]  *Id.* (quoting *Watson*, 326 So. 2d at 49).

[38]  *See id.*

[39]  363 So. 2d 818, 819 (Fla. Dist. App. 1978).

[40]  *Id.* at 821.

[41]  *Id.*

[42]  *Id.* at 822, *aff'd per curiam*.

Also in a similar vein is *Taylor v. Phoenix Insurance Co.*, in which a Florida court affirmed denial of UM coverage for a person shot by an unknown assailant while traveling on the highway.[43] The court stated that "[t]he fact that the location of the shooter is a motor vehicle does not mean the shooting arises out of the use of the vehicle."[44] It reasoned that there might have been coverage had there been evidence that the "speed, trajectory, or movement of the vehicle caused the bullet to go awry," but without such evidence the use of the vehicle could not be considered a cause of the injury.[45]

By contrast, cases affirming coverage tend to involve situations in which a firearm or other dangerous object was being transported in the vehicle. For example, in *Quarles v. State Farm Mutual Automobile Insurance Co.*, a Florida court ruled in favor of coverage for a man killed by the accidental discharge of a shotgun that he was unloading from a truck's gun rack.[46] The court reasoned that the gun rack, a permanent fixture in the truck, "established a significant causal connection between the use of the pickup truck and the accidental discharge of the shotgun," as the "transportation of firearms is an ordinary and customary use of a motor vehicle, especially pickup trucks."[47] Similarly, courts in *National Merchandise Co. v. United Service Automobile Ass'n*[48] and *Pomerantz v. Nationwide Mutual Fire Insurance Co.*[49] hold that coverage

---

[43]    622 So. 2d 506, 507 (Fla. Dist. App. 1993).

[44]    *Id.* at 509.

[45]    *Id.* at 510.

[46]    533 So. 2d 809, 810, 812 (Fla. Dist. App. 1988).

[47]    *Id.* at 812. We recognize that the lines drawn by Florida decisions are a little blurry, but we do our best to follow them.

[48]    *Nat'l Merch. Co. v. United Serv. Auto. Ass'n*, 400 So. 2d 526, 528, 533 (Fla. Dist. App. 1981) (per curiam).

[49]    *Pomerantz v. Nationwide Mut. Fire Ins. Co.*, 575 So. 2d 1311, 1312-13 (Fla. Dist. App. 1991).

is provided when a vehicle is being used in a "customary manner,"[50] such as to transport or load the item that injures.[51] In *National Merchandise Co.*, a Florida court affirmed coverage for a child's death after he ingested medication in a vehicle used for the owner's job of transporting medications.[52] In *Pomerantz*, a court provided coverage for an injury caused when a tree limb shattered the windshield of truck used to load logs.[53]

Also distinct are cases in which the vehicle's motion contributed to the injury. In *Valdes v. Smalley*, a court found coverage for a teen killed by a mug thrown from a vehicle in motion.[54] The court determined that "the accident originated from and was causally connected with the use of the automobile" and that the "act of throwing [the] mug was not a remote or mere 'intervening event' bearing no substantial or direct relation to the use of the vehicle,"[55] as the vehicle's "high rate of speed . . . greatly contributed to the velocity of the mug."[56]

The *Quarles* and *Valdes* lines of cases are inapplicable here. There is no evidence that the trailer was used to transport the fireworks. And the Elrods have not argued or alleged that the use of the trailer contributed to the trajectory or malfunctioning of the fireworks that injured Walter Elrod. Although they maintain that the trailer was selected as a platform for the fireworks because it was a stable and

---

[50]    *Id.* at 1313.

[51]    *Id.* at 1312-13; *Nat'l Merch. Co.*, 400 So. 2d at 528, 533.

[52]    400 So. 2d at 528.

[53]    575 So. 2d at 1312-13.

[54]    303 So. 2d 342, 344-45 (Fla. Dist. App. 1974).

[55]    *Id.* at 345.

[56]    *Id.* at 344. Some cases have disavowed this rule as requiring insufficient causal connection. *E.g.*, *Niglio v. Omaha Prop. & Cas. Ins. Co.*, 679 So. 2d 323, 326 (Fla. Dist. App. 1996) ("The expansive interpretation of *Valdes* [*v. Smalley*] has been muted by the approach to liability coverage adopted by *Race*, which uses causation analysis to narrow the scope of coverage.").

elevated platform, this is not enough. The deer hunter in *Hutchins* likely fired his rifle from the bed of the truck for similar reasons.[57] Similarly, the owner of the gun in *Watson* likely placed it under the seat because it was hidden and accessible there.[58] What the Elrods needed to show was that the trailer contributed to the injury in some way beyond being the place where the fireworks were launched. They did not. Therefore, this case is more like the *Watson*, *Taylor*, and *Hutchins* cases where UM coverage was denied because the vehicle was merely the place from which the projectile was fired. The superior court did not err in affirming the denial of UM coverage.

## V. CONCLUSION

We AFFIRM the judgment of the superior court.

---

[57] *See Hutchins v. Mills*, 363 So. 2d 818, 820 (Fla. Dist. App. 1978).

[58] *See Watson v. Watson*, 326 So. 2d 48, 48-49 (Fla. Dist. App. 1976).